Martin Corley, an Infant, by Walter Duncan, his Guardian ad Litem, Respondent, *v.* New York and Harlem Railroad Company, Appellant.

*New trial — not granted on proof impeaching the witnesses of the successful party — a fictitious display by the plaintiff of non-existent injuries is a ground therefor.*

A new trial will not be granted to enable the defeated party to impeach the witnesses of his adversary.

Where, upon a motion for a new trial in an action based upon negligence, it is shown by numerous affidavits taken after the recovery of a verdict by the plaintiff, an infant, that the plaintiff, who, supported by crutches and assisted by his father had proceeded to and from the witness stand with great apparent difficulty, had for more than two weeks before the trial discarded his crutches with his mother's consent, and had played and run about the street like other boys, the court will grant a new trial upon the ground that fraud has been practiced upon the court by a display of fictitious infirmities calculated to influence the jury, to the injury of the defendant.

Ingraham, J., dissented.

Appeal by the defendant, the New York and Harlem Railroad Company, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 8th day of October, 1896, denying its motion for a new trial on the grounds of newly-discovered evidence, surprise and that the trial had resulted in an injustice.

*Elihu Root,* for the appellant.

*De Lancey Nicoll* and *Sumner B. Stiles,* for the respondent.

Williams, J.:

The action was brought to recover damages for personal injuries sustained by a boy nine years of age, in an accident occurring March 10, 1896, upon defendant's street railroad. The boy had some wounds about the head, and a fracture of the right femur, about the middle of the leg. He was taken to the hospital immediately after the accident occurred and remained there until April 30, 1896, about seven weeks, and was then taken home and remained there until the trial and afterwards. The wounds about his head had healed

when he left the hospital, and his leg had mended so that he was able to use it in walking, but it was somewhat shorter than the other leg. The trial took place June 12 and 15, 1896, and resulted in a verdict for $8,500.

We are unwilling to grant a new trial upon the ground that the witnesses who testified for the plaintiff upon the trial as to the nature of the accident were unreliable. The authorities are uniform and consistent to the effect that a new trial will not be granted to enable the defeated party to impeach the witnesses of his adversary. (*People ex rel. Stemmler* v. *McGuire,* 2 Hun, 269; affd., 60 N. Y. 640; *Sims* v. *Sims,* 12 Hun, 231; *Michel* v. *Colegrove,* 46 N. Y. St. Repr. 899; *Schultz* v. *Third Ave. R. R. Co.,* 47 N. Y. Super. Ct. 285; *Holtz* v. *Schmidt,* 44 id. 327; *Duryee* v. *Dennison,* 5 Johns. 248.) The appellant's counsel appears to concede this general rule, and says that this is not such a case, but one where it appears that the verdict has absolutely no trustworthy evidence on which to rest. This seems to ignore the reason of the rule. We think, however, that the defendant makes out a clear case for a new trial, for the reason that there was a fictitious and fraudulent display before the jury of the boy's alleged infirmities, which could hardly have failed to improperly influence the jury. The papers used upon the motion leave no doubt in our minds that the boy was able to, and did, walk readily, without the use of crutches, both before and after the trial, and that the manner in which he was conducted through the court room to and from the witness stand, as described in the papers, was wholly and entirely unnecessary, as a matter of fact, and was gotten up solely for effect upon the jury. It was a dishonest display and a fraud and imposition upon the court and the jury. It was a false representation to the jury that over three months after the accident, and about a month and a half after his discharge from the hospital, the plaintiff not only was still compelled to use his crutches, but required, in addition, to be greatly aided. Of course, it influenced the jury, and very materially, for a very weighty and perfectly proper consideration with them was the actual effect upon the plaintiff of the injuries which he had sustained.

On the ground of fraud practiced upon the court and jury during the trial, the judgment should be set aside and a new trial granted. It was said in *Ward* v. *Town of Southfield* (102 N. Y. 287), by

EARL, J.: "A party defeated in a litigation may appeal from the judgment or move for a new trial, and, in a proper case, to vacate and set aside the judgment. These remedies are generally ample to protect all parties. But where there is fraud, not in the subject of the litigation, not in anything which was involved in the issues tried, but fraud practiced upon a party, or upon the court during the trial, or in prosecuting the action, or in obtaining the judgment, then, in a proper case, the judgment may be attacked collaterally, and on account thereof set aside and vacated." This is a case of "fraud practiced upon a party * * * during the trial;" and if it is ground for a collateral attack, it is certainly ground for setting aside the judgment in the same action, as the *Ward* case plainly indicates. That case was cited and applied to the case of a motion in the same action, in *Harris* v. *Ditson* (13 N. Y. St. Repr. 337), a case decided by the General Term in this department.

"Misconduct" — which may or may not be fraudulent — is as well recognized a ground for the granting of new trials as either surprise or newly-discovered evidence. It is treated of as such at great length in the American and English Encyclopædia of Law. In *Meyer* v. *Fiegel* (38 How. Pr. 424, 425) it is said that a new trial should be granted "if the successful party or any officer of the court or the jury have been guilty of gross misconduct."

This case is somewhat similar in principle (though much stronger for the defendant) to *Cole* v. *Fall Brook Coal Co.* (40 N. Y. St. Repr. 834). There a new trial was granted because the plaintiff exhibited after the trial a more vigorous state of health than the evidence in his favor would have rendered possible. The court set aside the judgment, and said: "If the injuries sustained by the plaintiff were not permanent, if, in fact, he has substantially recovered his health, the verdict was excessive in amount, and justice demands that the defendant should be allowed to present to another jury the newly-discovered evidence, with a view of at least lessening the damages." The rule laid down was stated by RUMSEY, J., in *Brooks* v. *Rochester Ry. Co.* (63 N. Y. St. Repr. 508, 513), to be "essential for the administration of justice, not only in negligence but in all other cases." The newly-discovered evidence of which the case speaks was simply the too rapid return to health of the plaintiff; and the decision seems to have been placed upon the

ground of injustice, a practical overpayment by the defendant. This feature is presented in the case at bar, to a like degree. If, on the other hand, the *Cole* case be taken as deciding that the plaintiff's return to health indicated fraud or misconduct at the trial in the presentation to the jury of the question of the extent of his injuries, then we have in the present case much stronger and more direct evidence of such fraud and misconduct.

For all the reasons herein stated we think that the order appealed from should be reversed, with costs in this court to appellant, and a new trial granted, the costs of the former trial to abide event.

BARRETT, RUMSEY and O'BRIEN, JJ., concurred; INGRAHAM, J., dissented.

BARRETT, J. (concurring) :

I concur with Mr. Justice WILLIAMS that a new trial should be granted in this case upon the second ground discussed by him. I agree with both Justices WILLIAMS and INGRAHAM that a new trial cannot be granted upon the first ground considered in each of their opinions. As to the second ground, I desire to add some considerations to those pointed out by Mr. Justice WILLIAMS.

The affidavits conclusively establish that, when the plaintiff was called to the witness stand during the examination of Dr. Kellogg, he made use of crutches and was lifted and helped along by his father, and that he returned to his seat in the same manner ; but that, nevertheless, for two weeks and over before the trial the boy had entirely discarded his crutches in the house where he lived, and had done so with his mother's consent. The affidavits stating that he had abandoned the use of crutches indoors before the trial are numerous and uncontradicted. His mother, herself, deposes that she " did request and instruct her son Martin to use crutches at all times within the house and when he went without the house, *for the first three or four weeks after his return from the hospital ;* and that during the subsequent intervening weeks prior to the trial your deponent requested and instructed her son Martin to use crutches *when he walked without the house, upon the street, and elsewhere.*" It will be observed that Mrs. Corley here pointedly omitted to state that after the first three or four weeks following his return from the hospital she gave her son any instructions to use crutches *in the*

*house.* It is overwhelmingly established that, during the latter period, he never used them in the house and frequently omitted their use out of doors. Indeed, he played and ran about in the streets quite the same as other boys. The use of crutches in the court room was, therefore, wholly unnecessary. The boy had nothing to fear from the people in the court room nor from the narrowness of the aisle to be traversed on his way to and from the witness stand. But, if he had anything to fear from these surroundings, the danger could only have been enhanced by the use of crutches. The reason which is given for their use seems quite shallow. It is, in truth, but a transparent pretense. There could have been but one purpose, and that was to hoodwink the jury — to deceive them as to the boy's sufferings and to appeal to their sensibilities. It was bad enough to present to the jury the false picture of a suffering boy upon crutches. But that was not all. He was lifted up, helped upon his crutches, supported while thereon and assisted, as he proceeded, apparently with great difficulty, to and from the witness stand. This was a gross, and I regret to say, a deliberate deception. For, it appears, by uncontradicted testimony, that immediately after the trial the boy was secluded and rigidly kept within doors. His parents were evidently determined that the spectacle presented in the court room should not be publicly followed by too marked and dangerous a contrast. And yet, while he was thus withdrawn from general observation, he was permitted, without crutch or assistance, to play upon the roof of the house and actually to climb upon the rear fire escape. As his mother naively remarked to one of the affiants, "he had to get some air sometime." Not a word of this is denied by either of the boy's parents. Mr. Corley says nothing whatever upon the subject. Mrs. Corley is most specific in her denials with regard to other matters, but her denial stops short when she reaches the matter in question. There is neither denial of the fact nor explanation of what is thus admitted. What transpired in the court room is also practically undenied. The affiants, who present the plaintiff's version of the incident, admit the substantial facts but vary the coloring. Or, rather, they apply their own coloring. All admit that the plaintiff's counsel publicly called upon the boy to approach the witness stand so that his physician might point out to the jury the location of the injuries and "indicate them on the boy's person."

And the record of the trial shows that the plaintiff was examined by this physician before the jury. All concede that the boy, in going to and returning from the witness stand, had "the assistance of his crutch and his father." There is no denial that Mr. Corley lifted the boy up and helped him to get hold of his crutches; no denial that, partly supported by his father and aided by the crutches, with great apparent difficulty, he made his way to the witness stand where the doctor was; no denial that, when the doctor was through with him, with equal apparent difficulty he made his way back to his seat, assisted and supported in the same way. It is also stated, without contradiction, that the infant while *en route* kept his right leg bent and the right foot raised above the floor, and was apparently utterly unable to stand or bear any weight upon it. Dr. Chapin, too, deposes, and his statement is not denied, that "said infant carried his leg as if he had a dislocation of the hip joint or a tubercular or other inflammation of said joint."

In view of such conceded facts, of what importance are the opinions of affiants upon either side as to the tone of the picture or as to its effect upon the jury. One side says that the incident was pathetic and calculated to inflame the sympathies of the jury; the other that it was a very trivial matter, quite simple and natural under the circumstances, and productive of no possible effect, apart from the evidence of permanent injury. The facts, however, speak for themselves. The jury were neither blind nor deaf. They undoubtedly awarded damages for the permanent injury; that is, for the probable shortening of the leg. But how can it be asserted that they confined themselves to this single element? They were also authorized to award damages for pain, suffering and inconvenience, past, present and prospective; and, undoubtedly, counsel, in summing up, dwelt upon this general element of damage and begged the jury to give it due consideration. How can it be doubted that they did consider the plaintiff's pain, suffering and inconvenience, in addition to the shortening of his leg? And if they did, as we are bound to assume they did, whether or no their attention was specially called by the court to this element of damage, it must be conceded that the damages were enhanced by the child's actual and present suffering and distress as dramatically depicted before their eyes. This picture was more plausible, potent and convincing than mere

words issuing from the mouths of witnesses. A jury may doubt witnesses or forget their precise language, but they can hardly fail to take in such an object lesson as was here presented to their physical senses. The plaintiff's learned counsel fully appreciated this, and he took immediate advantage of the incident — doubtless, innocently (as we have no reason to suppose that he was aware of the deception). For, when the defendant's counsel ventured to inquire of Dr. Kellogg whether it was necessary for the boy to be then on crutches, that physician was promptly asked on the redirect, whether he ever saw boys walk on crutches from preference, or whether he ever saw one do so unless compelled to — questions which this plaintiff's doctor very naturally answered in the negative. How it is possible, in view of all these facts, to say that the incident in question was "nothing more than a statement of the boy to the jury that the injury which he had received was more than the defendant claimed," passes my comprehension.

The respondent entirely misapprehends the grounds upon which a new trial under such circumstances may be granted. It is neither upon the ground of surprise nor of newly-discovered evidence. I agree with Mr. Justice INGRAHAM that the cases of *Cole* v. *Fall Brook Coal Co.* (40 N. Y. St. Repr. 834) and *Brooks* v. *Rochester R. R. Co.* (63 id. 508) are not precisely parallel to the present case, though the principles there stated support the defendant's motion. The host of affiants here who depose to the plaintiff's ability to go about without crutches or assistance are not necessarily witnesses in the cause at all — past or prospective. Their depositions are but indirectly upon the merits. These depositions bear directly upon the deception practiced upon the court and jury at the trial. They clarify the fraudulent trick and device by showing that the spectacle presented to the jury was essentially false and sham. This is not newly-discovered evidence at all as that expression is ordinarily used, but simply direct evidence of the fraudulent artifice which was resorted to in the court room. Nor have the rules with regard to surprise any important bearing upon the present question. The defendants were not, in a legal sense, surprised by the incident complained of. They knew that the boy was injured, but they did not know, nor were they bound to know, that crutches and personal assistance were then and there essential. The boy himself

was not examined, nor was his father, while his mother testified that he had not been off his crutches at all, to her knowledge, since he came home from the hospital — a statement which was grossly inaccurate, but which intensified the deception.  There was no reason why the defendant's counsel, any more than the court or jury, should suspect the integrity of a spectacle which was presented with every appearance of verity and which was colored by testimony calculated to avert suspicion.  But even if their suspicions had been aroused — if doubt had been awakened by some quick divination — it would have imposed a grave responsibility upon them to question the appearance at such a critical moment.  If it had turned out that their suspicions were unfounded, the public expression of these suspicions would certainly have injured their client's case.  It would have readily subjected them and their clients to the impression that they were adding heartless insult to injury.  The defendant's counsel were surely not required to fortify themselves in advance for any fraudulent device which might possibly be attempted in the court room.

It is a mistake to suppose that a new trial can only be granted when a case therefor can be classified under some well-defined head such as surprise or newly-discovered evidence.  The court is not thus limited.  The true rule is well stated in Graham and Waterman on New Trials, 1009, as follows: "It need scarcely be said that any unconscionable advantage obtained during a trial by one party over the other, through fraud or artifice, to the injury of the latter, will be good ground for a new trial.  So obvious a principle of common right and justice requires no comment and needs no illustration."  I quite agree that verdicts should not lightly be disturbed, and that the court, in granting new trials, should act with great caution.  But the rule above stated — a rule which was fully recognized in *Ward* v. *Town of Southfield* (102 N. Y. 287) — is founded upon justice and necessity.  It should be firmly applied when the facts clearly warrant its application.  I can conceive of nothing better calculated to encourage fraudulent litigation than the minimizing of such misconduct as is here disclosed.

The order should, therefore, be reversed, and a new trial granted, with costs of this appeal to the appellant.  The costs of the former trial should abide the event.

INGRAHAM, J. (dissenting):

I do not think that this order can be reversed without violating the settled rules which have always governed the disposition of applications of this character.   On the trial of the action the defendant was represented by competent counsel who cross-examined the witnesses produced by the plaintiff, and the question as to the credibility of their testimony was presented to and passed upon by the jury.   The defendant asks to have their verdict set aside and a new trial granted, because several of the witnesses who testified in favor of the plaintiff at the trial have since made affidavits which are inconsistent with the testimony given at the trial.

The fact that subsequent affidavits produced by the plaintiff from the same persons, reaffirm the truth of the testimony which they gave upon the trial, is only important as tending to show how extremely dangerous it is to place the slightest reliance upon statements or affidavits made under these circumstances.   If such affidavits or statements are received, and a new trial granted when the witnesses who testified for the successful party can be induced, after the verdict, to make inconsistent statements, no verdict could be safe, especially where the witnesses are infants, unable to read or write, and can be induced to sign papers which they do not understand.   The rules that regulate applications for a new trial are based upon long experience, and such applications are only granted upon certain grounds which are well defined.

It has been long settled that a new trial will not be granted for the purpose of impeaching a witness whose testimony was relied upon by the successful party, and this is really the only ground upon which this application is based.   There is no newly-discovered evidence within the meaning of that term as used in applications of this character. There was no surprise upon the trial which would justify the court in granting a new trial.   The only ground is that private detectives in the employ of this railroad company have succeeded in obtaining from certain of the witnesses, who testified for the plaintiff on the trial, statements or affidavits which are to some extent inconsistent with the testimony that they gave; but upon no principle of which I am aware can such statements be the basis of a motion for a new trial.

Nor do I think the incident that is called "a theatrical display of the condition of the plaintiff" sufficient to justify the court in granting a new trial. While it is quite probable that the action of the boy in the court room would tend to indicate a more serious condition of the leg at the time of the trial than actually existed, this was certainly nothing more than a statement by the boy to the jury that the injury which he had received was more serious than was claimed by the defendant.

The boy's mother was a witness, and described the condition of the right knee when the boy got back from the hospital. She testified that since the boy got home from school he had not been off his crutches to her knowledge; that he was "nervous and very weakly since" the accident; the witness was cross-examined by counsel for the defendant. There was also called for the plaintiff a physician who testified that he had examined the boy's leg; that he found evidence of fracture, and evidence that the right ear had been sewed up; that he had measured the boy's legs and found that the left leg was somewhat longer than the right — about an inch longer. There was no evidence that the injury was permanent, or that it would have any permanent effect upon the boy in after life, except so far as this slight shortening of the leg might occasion him slight lameness. The defendant called two physicians who testified that after such a shortening of the leg as was here described, the shortening would not increase in after years; and that when the boy attained maturity the difference would not be any greater than it was at the time of the trial. Nothing appears in the case to justify the assumption that the jury were asked to, or did, consider the apparent lameness of the boy in court as evidence that he would not entirely recover from the condition exhibited on the trial within a short time. The trial took place in less than three months from the time of the accident, and when the boy had been but a short time from the hospital. The boy, himself, does not appear to have been called as a witness. The only statement in the charge of the court to the jury as to the permanency of the injury was as to this shortening of the leg. The court charged the jury that "it appears that he has sustained a permanent injury in the breaking of his thigh bone, and the shortening of his leg to some extent; an apparent shortening of half an inch * * * as I understand the testimony of the witnesses. Experts on

the part of the plaintiff have been called for the purpose of showing that this difference in length between the two legs will increase as the boy grows older. Experts on the part of the defendant have been called to testify that that will not be the result. It is for you to determine, on this conflict of testimony, what the permanent injury to the boy is — whether the injuries from which he now suffers will, or will not, be greater. But, in no event, can you find that his injuries in the future will be greater, unless you find that there is reasonable certainty of it." Now, all this had nothing to do with the action of the boy in court, was not based upon any evidence of the boy himself or his parents that the injuries were permanent, or that he would be compelled to use crutches, or would be unable to use his leg in the future. The only evidence upon which it was claimed that the injury was permanent was that of the physician as to a difference in the length of the two legs after the injury, which was not disputed. The jury were not instructed that they could allow for the pain and suffering of the boy or for his present condition; and it would appear from the charge that all that was left to them upon the question of damages was to fix the compensation for the permanent injury caused by the shortening of the leg. The boy was in court, subject to the examination of the defendant's experts, and it would appear that he was examined by a physician called by the defendant in the court room. The defendant could have had no difficulty in ascertaining the exact condition of his leg at the time; and there was no claim made on behalf of either party that there was any permanent injury except this shortening of the leg which has been before referred to.

Neither of the cases cited by the defendant is at all in point. In the case of *Cole* v. *The Fall Brook Coal Co.* (40 N. Y. St. Repr. 834) the plaintiff had testified on the trial that the injuries were such as to prevent him from walking at all, and that they were of a permanent character, he producing other evidence to corroborate him; and upon that fact the defendant introduced no evidence. It subsequently appeared by statements and acts of the plaintiff that his injuries were not of a permanent character, but that he had at the time of the trial fully recovered. Upon that state of facts the court ordered a new trial; and, on appeal, the General Term held that the trial justice exercised his discretion wisely. It was held that the

new evidence was not cumulative, as no evidence of that character had been given by the defendant on the trial. The court said : " If the injuries sustained by the plaintiff were not permanent, if, in fact, he has substantially recovered his health, the verdict was excessive in amount, and justice demands that the defendant should be allowed to present to another jury the newly-discovered evidence, with a view of at least lessening the damages. If the affidavits presented by the defendant are true, the plaintiff deliberately misrepresented his physical condition with a view of deceiving the court and jury." The case of *Brooks* v. *Rochester R. Co.* (10 Misc. Rep. 96) presented a similar question. In that case Mr. Justice RUMSEY, the trial judge, refers to *Cole* v. *Fall Brook Coal Co.* (*supra*), where the verdict was set aside upon the ground that it was based upon the theory, which the evidence tended to sustain, that the injury received by the plaintiff was of such a nature that he was physically ruined and would be utterly unable to do any work, to stand erect or to support himself at all, while " the affidavits presented by the defendant upon that motion showed that immediately after the verdict he had experienced a sudden and miraculous recovery, having become, from a confirmed invalid, a strong and vigorous man, able to do a day's work as well as anybody. * * * . The court held that this condition of affairs tended to establish a practical fraud practiced upon the court and the jury, and that justice required that these new facts should be presented to another jury, which might pass upon the question of the damages suffered and of all those facts before it." The difference between the facts upon which that case was decided and the case at bar is obvious.

The court below denied this motion. It is quite possible that, if the judge before whom the trial took place, having personal knowledge as to what transpired in the court room, had considered that any act of the plaintiff or his parents had conveyed to the jury false impressions as to the extent of the injury, and that this had improperly influenced them, and for that reason had granted a new trial, we should not have interfered with his determination. But the motion has been denied by the court below, and I do not think that this court is justified in reversing that action.

Order reversed, and new trial granted, with costs of appeal to appellants. The costs of former trial to abide event.