GEORGE E. MCCARTHY, Appellant, *v.* PORT OF NEW YORK AUTHORITY, Respondent.

First Department, April 21, 1964.

*Mario Matthew Cuomo* of counsel (*Edward M. Edenbaum,* attorney), for appellant.

*Francis X. Curley* of counsel (*Sidney Goldstein,* attorney), for respondent.

*Per Curiam.* The question is whether defendant's post-trial motion for a new trial of this personal injury negligence action was properly granted, after previous denial on the record of a similar motion. Supplemental evidence submitted after trial on the second motion established false testimony by plaintiff and his witnesses, which, if available on the trial, probably would have changed the result.

The order appealed from should be affirmed. The promptly-made motion was made in the action and, therefore, was not a collateral attack. The supplemental evidence was presented to prove the falsity of testimony which unexpectedly established the critical importance of a secondary fact; the degree of diligence must be weighed against the high degree of apparent false testimony, its significance, and the resulting injustice. Moreover, a new trial probably would have been warranted, if not required, on the trial record alone.

Plaintiff, while a fire captain, claims to have been injured by a dangerous condition, in the nature of a trap, in a Port Authority building while attempting to locate a fire (cf. *Maloney* v. *Hearst Hotels Corp.,* 274 N. Y. 106; *Meiers* v. *Koch Brewery,* 229 N. Y. 10; *Beedenbender* v. *Midtown Props.,* 4 A D 2d 276, 281). He and two firemen testified that they were directed into the building. According to them, they groped along a cellar corridor filled with steam and dense acrid wood smoke that made their eyes tear. They said they came to a warm metal door and could hear the steam hissing. Plaintiff claims he opened the door, was met by heat, steam, and black, tarry smoke, and heard the crackling of fire and loud hissing. He asserted he could see nothing except a dim glow, and when he stepped forward in the darkness he fell about five feet through space. The resulting injury to his ankle developed into a permanent condition.

The evidence is undisputed that the door led into a boiler room. There were no stairs or ladder from the floor level at

the door to the boiler room floor — just a sheer drop of about five feet.

This dramatic story was supported by the further testimony of the three men that wood smoke makes the eyes tear, and that the smoke and escaping steam was created by the burning of lumber partially sticking out of the open fire chamber of the boiler. They asserted that the hot wood fire was reduced and the conditions alleviated by dropping the fire into the ash pit through movable grates, pushing the lumber into the fire chamber, and closing the fire chamber and lower draft doors. They said the grates were moved by a lever or handle on the outside of the fire chamber.

But a photograph of the fire chamber face which was introduced into evidence shows no lever or handle. The building maintenance foreman testified the grates were immovable. Defense witnesses testified there was no dense acrid smoke, wood fire, open doors or obscured visibility. They said plaintiff squatted down, jumped onto a coal pile, and fell on some wood, timber or a log in the coal.

The evidence in the trial record, especially when the significance of the unimpeachable photograph is appreciated, is probably sufficient in itself to support setting aside the verdict. Instead, the trial court on the record denied the motion, but informed the parties off the record that he would do something about the verdict if defendant could present definite, irrefutable evidence that the grates were immovable. This would indicate that plaintiff and his fellow firemen concocted an exaggerated story, since it would show that there was no open wood fire that was dropped to alleviate the dense acrid smoke and steam which obscured plaintiff's vision and contributed to his fall.

Ten days after the jury verdict and suggestion of the trial court, defendant moved on the basis of affidavits and exhibits which established beyond question that the grates were immovable. Actually, to empty the fire chamber, one used a long metal hoe.

The court has inherent power, not confined rigidly by well-defined rules, to set aside a verdict or vacate a judgment and order a new trial in the interests of justice (e.g., *Ladd* v. *Stevenson*, 112 N. Y. 325; *Barrett* v. *Third Ave. R.R. Co.*, 45 N. Y. 628, 632; *Stoddard* v. *Stoddard*, 37 N. Y. S. 2d 605, 608, affd. 264 App. Div. 980). This inherent power is now codified 4404 and 5015 Civil Practice Law and Rules. Numerous grounds have been enunciated in the cases for the exercise of the power (see Weinstein-Korn-Miller, N. Y. Civ. Prac., vol. 4,

pars. 4404.01–4404.35, vol. 5, pars. 5015.01–5015.17, especially pars. 5015.08 and 5015.09; McKinney's Cons. Laws of N. Y., Book 7B, CPLR, pp. 246–247, 583–584).

The posttrial motion was made within 15 days from rendition of verdict, the time period required for a motion directed to the weight of the credible evidence (see CPLR 4404, 4405, formerly Civ. Prac. Act, § 549 and Rules Civ. Prac., rule 60–a). However, it presented additional evidence. While the additional evidence was corroborative, it was also, because of its conclusive character, evidence of a gross fraud upon the court. Since the additional evidence was available, or could have been made available by diligent effort, at time of trial, it probably would not suffice by itself, even though it would probably change the result, if it concerned only the merits (e.g., *Stoddard* v. *Stoddard, supra*, pp. 610–612; *Grafton* v. *Ball*, 164 App. Div. 70, app. dsmd. 220 N. Y. 753). Even when such evidence concerns misconduct such as perjury, if it is used long-afterwards in a different action collaterally to attack a judgment, the attack may not be successful (see *Matter of Holden*, 271 N. Y. 212, 218; *Jacobowitz* v. *Herson*, 268 N. Y. 130, 134; Weinstein, *supra*, par. 5015.13).

Thus, the court should weigh the likelihood and degree of the false testimony, the affront to the court, and the probability of changing the result against the degree of diligence exercised by the moving party and the time and manner in which the new trial is sought (see *Lando* v. *Murray's Trucking Corp.*, 258 App. Div. 616, 618; *Blood* v. *Colby*, 236 App. Div. 537, 539–540; *Nugent* v. *Metropolitan St. Ry. Co.*, 46 App. Div. 105, 110–111; *Corley* v. *New York & Harlem R. R. Co.*, 12 App. Div. 409). And it is not determinative that the evidence showing false testimony also relates to the merits (see *Jordan* v. *Volkenning*, 72 N. Y. 300, 306; *Frohlich* v. *Zeltzer*, 185 App. Div. 103, 110).

Here the motion was based on irrefutable evidence. Without the exaggerated story of plaintiff and his witnesses, the jury might have returned a verdict for defendant. Though the additional evidence concerning the grates was available or could have been made available to. defendant, it had no reason to believe that plaintiff and the firemen would testify as grossly as they did concerning them. The motion was promptly made in the very action, and the evidence supplemented .evidence already in the trial record. It certainly came as no surprise. Because it involved a secondary, albeit significant, fact, defendant was not likely to have exhausted extraordinary methods or sources of corroborative proof that the furnace grates were

immovable. Moreover, there was already substantial basis in the record to warrant setting aside the judgment. Thus, if the new trial order were reversed defendant could simply appeal from the resulting judgment and this court would probably be warranted in ordering a new trial.

The precedents make clear that there is no hard-and-fast rule for the granting of new trials in the interests of justice. When the attack is collateral, long-delayed, or merely reflects a disappointed or ill-prepared litigant's second thought, a new trial is always denied. Where, however, there is clear evidence of a gross fraud practiced upon the court, the court has power and exercises it to nullify its own verdict or judgment, thus fraudulently procured.

Accordingly, the order should be affirmed, with costs to defendant-respondent.

BREITEL, J. P., McNALLY, STEVENS, STEUER and BASTOW, JJ., concur.

Order, entered on March 19, 1962, unanimously affirmed, with $20 costs and disbursements to respondent.