# Richmond

GALEN RANDOLPH REIL v. COMMONWEALTH OF VIRGINIA.

December 1, 1969.

Record No. 7095.

Present, All the Justices.

*Ronald W. Williams* (*Selig H. Kingoff; Warren, Parker and Williams,* on brief), for plaintiff in error.

*M. Harris Parker, Assistant Attorney General* (*Robert Y. Button, Attorney General,* on brief), for defendant in error.

COCHRAN, J., delivered the opinion of the court.

Defendant, Galen Randolph Reil, was tried under sec. 18.1-109, Code of Virginia, and found guilty by a jury of the embezzlement of $250.00 from his employer. His punishment was fixed at a fine of $500.00. The trial court overruled his motion to set aside the verdict and entered judgment in accordance with the verdict, giving him six months within which to pay the fine and costs. He is here on a writ of error to the judgment.

Defendant contends that the trial court erred (1) in admitting into evidence a letter written by him to his wife, (2) in imposing certain restrictions on him before the trial commenced as to the evidence which he might introduce, and (3) in refusing to set aside the jury verdict because of radio news releases which were broadcast the day before the trial commenced.

The evidence shows that Reil organized in 1963 and was for several years thereafter a stockholder in Galen's Shoes, Inc., a corporation operating first one and then two shoe stores in Danville. Forty-five percent of the outstanding stock in the corporation was owned by Reil, ten percent by another employee and forty-five per cent was owned by Riverside Shopping Center, Inc., a corporation controlled by one John W. Daniel. Reil managed both stores and was paid a weekly salary. Financial problems having developed in the business, on July 21, 1967 an agreement was signed by Reil and Riverside, under which Reil was to continue to manage the shoe stores as an employee under close supervision in accordance with procedures outlined in the agreement. All checks on the bank accounts of the business were to be countersigned by Daniel's auditor, John Ryan, and no money was to be disbursed without Ryan's approval. Shortly thereafter Riverside acquired all the outstanding capital stock of Galen's Shoes, Inc.

On the evening of August 31, 1967 Ryan countersigned in blank and delivered to Reil eight checks, six for payroll at the two stores, including Reil's own weekly salary and that of his wife, who also worked in one of the stores, and two for outstanding telephone and advertising bills. The next morning Reil filled in and signed the six payroll checks, including his own check for $112.21 after proper deductions from his gross weekly salary of $130.00. He then made out the seventh check payable to himself for $250.00. He never signed the eighth blank check and inserted it in the checkbook unwritten. Although checkbook stubs were filled in for the payroll checks none was filled in for the $250.00 check nor was any notation made on the face of the check to show the purpose for which

it was written. Reil testified that the $250.00 check represented vacation pay for two weeks to which he was entitled, at $130.00 per week, less deductions arbitrarily taken at $5.00 per week. However, before he filled in and signed the check, he advised no one that he was claiming or taking vacation pay or that he was terminating his employment.

This check for $250.00, which gave rise to the charge of embezzlement upon which he was tried, was cashed on September 1 by Reil from the store's bank deposit and, as prearranged, he and Daniel's married daughter, Mrs. Lois Daniel Dalton, left Danville in separate cars and drove to Orlando, Florida.

Several days after they arrived in Florida Reil telephoned his attorney in Danville and was informed of the embezzlement charge against him and of other charges against Mrs. Dalton. Reil and Mrs. Dalton immediately returned to Danville.

Daniel testified that Reil had informed him that he did not plan to take any vacation in 1967 except for one weekend. Ryan testified that Reil told him on August 31, 1967 that he would take off "a couple of days" the following week, but Reil never mentioned vacation pay.

From their verdict it is apparent that the jury, as they were justified in doing, rejected Reil's explanation that the $250.00 check was vacation pay to which he was entitled and believed the evidence introduced on behalf of the Commonwealth.

During the course of the trial a letter written by Reil to his wife before leaving town with Mrs. Dalton was introduced into evidence over the general objection of Reil's counsel. This is now assigned as error on the ground that the letter was a privileged communication between husband and wife. The letter reads as follows:

"Rosie, when you read this I will be many miles away from here. I am truly sorry for it to end like this. However I can not help it. I have tried for several years to make things different and could not. I have found someone with whom I know I will be happy. I don't want to hurt you and the boys, but there is no other way. I love the boys more than you or anyone will ever know. Please take good care of them so they will become a man which we both will be proud of. I have no idea where we will wind up. Our punishment from the Lord above may be such that you will never see us again. Contact Ronald Williams as we have worked things out with him. Galen R. Reil."

This letter, if proper objection had been made and exception noted, was inadmissible as a privileged communication coming within the prohibition of sec. 8-289 of the Code of Virginia, which provides that "Neither husband nor wife shall, without the consent of the other, be examined in any case as to any communication privately made by one to the other while married, nor shall either be permitted, without such consent, to reveal in testimony after the marriage relation ceases any such communication made while the marriage subsisted." See *Menefee* v. *Commonwealth*, 189 Va. 900, 55 S. E. 2d 9 (1949).

Defendant's counsel did not object, however, on the ground that the letter was a privileged communication. Rather, he made a general objection, which the trial judge interpreted as an objection that the letter was irrelevant, as shown by the following exchange:

"Mr. Williams: I would object to this, Mr. Fuller.
Judge Craig: I think it's got some probative value.
Mr. Williams: I would except to that."

Thus, proper objection was not made in compliance with Rule 1:8, the pertinent provisions of which are:

"In civil and criminal cases, all objections to writs of every kind, pleadings, instructions, notices, the admissibility of evidence, or other matters requiring a ruling or judgment of the trial court, shall state with reasonable certainty the ground of objection, and, unless it appears from the record to have been so stated, such objections will not be considered by this court except for good cause shown, or to enable this court to attain the ends of justice."

The reason for application of the rule has been set forth clearly in *Harlow* v. *Commonwealth*, 195 Va. 269, 273, 77 S. E. 2d 851, 854 (1953):

"Rule 1:8 requires that the trial judge be informed of the precise points of objection in the minds of counsel so that he may rule intelligently, thereby avoiding delay and the expense incident to appeals, reversals and new trials upon grounds of objection which might have been obviated or corrected in the trial court. Therefore this rule must be adhered to unless the exceptions therein stated apply."

See also *Daniels* v. *Morris*, 199 Va. 205, 98 S. E. 2d 694 (1957); *Gooch* v. *City of Lynchburg*, 201 Va. 172, 110 S. E. 2d 236 (1959); *Melvin* v. *Commonwealth*, 202 Va. 511, 118 S. E. 2d 679 (1961).

The exceptions set forth in Rule 1:8 permitting this court to consider objections not properly made in the court below for "good cause shown or to enable this court to attain the ends of justice" are not applicable in this case. If we were to concede that the objection was properly made in the trial court, the error committed in admitting the letter into evidence was harmless error. There was nothing in the letter which was not brought out by other evidence during the trial except for Reil's affection for his young sons. He was not prejudiced, and may have been helped, by this disclosure.

█ Defendant next complains of the restrictions placed upon him before the trial commenced when the trial court ruled that evidence would not be admitted respecting the motives of John W. Daniel in swearing to the warrant against Reil or the motives of Mrs. Dalton's husband in swearing to warrants against her.

After John W. Daniel had testified and during the presentation of the defendant's case, the trial court removed any restrictions on the introduction of evidence as to the motives, interest or bias of John W. Daniel in order that the defense might attack his credibility as a witness. Counsel for the defendant did not ask leave of court, however, to recall John W. Daniel or any other witness. If there was any error in the initial ruling as to the admissibility of evidence, as to which we express no opinion, it was harmless error which was corrected by this subsequent ruling.

It is true, as pointed out by defendant's counsel, that the trial court refused to modify its previous ruling that evidence would not be admitted respecting the motives of Mrs. Dalton's husband in swearing to warrants against her. However, counsel not only failed to object to the trial court's refusal to modify its previous ruling in this respect but also failed to proffer the evidence which he desired to introduce. Therefore, we cannot pass on the admissibility of that evidence.

█ Finally, defendant complains of the failure of the trial court to set aside the jury verdict because of news releases broadcast over a Danville radio station on November 15, 1967, the day before the Reil case commenced. On November 14, 1967 a jury in the Corporation Court of Danville found one Elmer Lee Kelly guilty of armed robbery and sentenced him to prison for ten years. On November 16, 1967 trial of defendant's case was commenced in the same court

before a jury selected from the same panel of jurors serving for the November criminal term.

The broadcasts in question were highly critical of what was deemed to be the unduly light sentence imposed by the jury in the Kelly case. In one broadcast the Commonwealth's Attorney, the Chief of Police and the Chief of Detectives were reported to be disturbed by the leniency of the jury and in another broadcast unnamed "high court and police officers" were said to have expressed concern.

Defendant contends that since many of the Reil jurors heard one or both of the broadcasts they must consciously or unconsciously have been prejudiced thereby and caused to react against him. We do not agree. The trial judge quite properly made thorough inquiry into this matter as soon as it was brought to his attention. He polled the jurors himself and permitted defendant's counsel to poll them and no juror thought that he had been prejudiced in the Reil case by the broadcasts. The record does not show how many, if any, of the Reil jurors heard the broadcasts or how many of them heard the broadcasts discussed. It does not show that any Reil juror was influenced by them in any way. The punishment fixed by the jury was quite lenient and this in itself, as the trial judge pointed out, rebuts any suggestion of prejudice on the part of the jurors against Reil.

*United States* v. *Milanovich*, 303 Fed. 2d 626 (1962), is relied upon by defendant as authority for requiring a new trial unless there is an affirmative showing by the Commonwealth that the jurors were not affected by the news releases. But *Milanovich* and *Marshall* v. *United States*, 360 U. S. 310, 79 S. Ct. 1171 (1959), on which it rests, both involved news releases of inadmissible information in pending cases. They are clearly distinguishable on their facts from the present case, where the news broadcasts related to an earlier trial not under consideration by the jury. Furthermore, the ruling of the United States Supreme Court in *Marshall*, being based upon the supervisory powers of that Court rather than the due process clause of the United States Constitution, would not be controlling in this case if the facts were identical.

Each case of this kind, when the competency of jurors is in issue, must be determined under its own facts. *Temple* v. *Moses*, 175 Va. 320, 336, 8 S. E. 2d 262 (1940).

In the present case the trial judge had the opportunity to observe the jurors during the trial of the case and during his subsequent inquiry into the effect upon them of the news broadcasts. It was his duty, in the careful exercise of his discretion, to pass upon their

credibility and the weight of their statements and determine whether or not a new trial should be granted. *Lilley* v. *Simmons*, 200 Va. 791, 798, 108 S. E. 2d 245, 250 (1959); *Temple* v. *Moses, supra,* 334, 335; *Cox* v. *Commonwealth*, 157 Va. 900, 162 S. E. 178 (1932); *Ballard* v. *Commonwealth*, 156 Va. 980, 159 S. E. 222 (1931).

As Mr. Justice Spratley said in *Temple* v. *Moses, supra,* at 337

"The discretion of the able, learned and experienced trial judge exercised upon such motions will not be interfered with upon review by this court, unless some injustice has been done."

Here, the record clearly shows that the trial judge exercised his discretion with great care and that the defendant suffered no injustice and was fairly tried.

*Affirmed.*