## Richmond

RICHARD CLARK BELL

v.

DOROTHY MAE KIRBY

Record No. 820756.

January 20, 1984.

Present: Carrico, C.J., Cochran, Poff, Compton, Stephenson, and Thomas, JJ., and Harrison, Retired Justice.

*S. J. Thompson, Jr. (Caskie, Frost, Hobbs, Thompson, Knakal & Alford,* on brief), for appellant.

*E. Ronald Feinman, Jr. (Bell, Coward, Morrison & Spies,* on brief), for appellee.

THOMAS, J., delivered the opinion of the Court.

Dorothy Mae Kirby sued Richard Clark Bell for personal injuries sustained when Bell, who was driving a van, struck Kirby as she was crossing a street. Bell admitted liability. The case was tried to a jury on the question of damages. The jury returned a verdict of $60,000.00 in favor of Kirby. After the trial court disposed of certain post-trial motions, it entered judgment on the verdict.

Bell makes four assignments of error, but chief among these is his contention that the trial court should have set aside the verdict and awarded a new trial because Kirby was brought into court in a wheelchair where she remained throughout the trial. According

to Bell, Kirby's use of the wheelchair, on the day of the trial, was a misrepresentation to the court and the jury that she was confined to a wheelchair. For the reasons expressed below, we reject this argument.

On December 26, 1980, when Kirby was struck by Bell's van, she suffered injuries to her right knee. The knee was operated on, then placed in a cast. By May 26, 1981, Kirby had recovered sufficiently to be released for full-time work. However, she was still under her doctor's care. On August 4, 1981, she broke her left ankle when she slipped in soapy water while washing clothes at home. The second injury was entirely unrelated to the first. However, when the case concerning the first injury came on for trial, Kirby's left ankle was still in a cast and she had difficulty getting around. The evidence established that prior to trial she had been using a walker.

On the day of trial, Kirby's counsel sent his son to transport Kirby to the courthouse. He told him to transport Kirby in a wheelchair. Kirby was wheeled into court. There she remained throughout the trial. She even testified from the wheelchair.

Whether a new trial should have been granted on the ground asserted by Bell is a matter that lies in the discretion of the trial court. *See Reil* v. *Commonwealth*, 210 Va. 369, 171 S.E.2d 162 (1969); *Temple* v. *Moses*, 175 Va. 320, 8 S.E.2d 262 (1940). Moreover, as we said in *Temple*, "[t]he discretion of the able, learned and experienced trial judge exercised upon such motions will not be interfered with upon review by this court, unless some injustice has been done." 175 Va. at 337, 8 S.E.2d at 269. It is clear from the record that the trial court did not abuse its discretion and consequently no injustice was done by its entering judgment on the verdict.

The trial court went to great lengths to gather all evidence relevant to the motion to set aside the verdict. It conducted three separate post-trial proceedings regarding Kirby's use of the wheelchair at trial. In our view, the evidence adduced in the post-trial proceedings amply supports the trial court's conclusion that a new trial was not warranted.

The post-trial evidence showed that at the time of trial, Kirby's left leg was in a cast and she had difficulty moving around. Though she had been using a walker, she had not used a walker to traverse distances as great as those she encountered in getting from a parked car into the courthouse. Nor, according to her doc-

tor, had she used a walker over topography as uneven as that encountered at the courthouse. Moreover, her doctor had ordered her not to place any weight on her left leg. To accomplish this using a walker, she would have been required to hop along on her right leg. Further, had she used a walker she would have had to sit, during the trial, on a hard-back courtroom chair that, according to her doctor, probably would have been uncomfortable. Kirby's doctor also testified that under the circumstances, the use of a wheelchair to transport her to the courtroom was reasonable because it kept weight off her left leg, gave her a place to rest that leg during trial, and saved her the discomfort of sitting on a hard bench. Given this evidence, we cannot say that the trial court abused its discretion in denying the motion to set aside the verdict.

Moreover, we think that further support for the trial court's denial of the defendant's motion can be found in the manner in which the court took pains to ensure the jury knew that use of the wheelchair was unrelated to the accident upon which suit was brought. The trial court gave several cautionary instructions concerning the presence of the wheelchair. It instructed the jury that use of the wheelchair was the result of an unrelated accident and questioned the jury whether it could render an impartial verdict. When the jury said yes, the trial proceeded. The fact that the use of the wheelchair was unrelated to the accident sued upon was mentioned by counsel for both parties and the court, more than once.

There was no question that plaintiff could not walk on her own; the question was whether she should use a wheelchair or a walker. Whichever device was chosen the image was the same: that of a plaintiff who could not get around on her own. Neither choice was free from the risk that plaintiff would, in the words of the trial court, look "pathetic." Thus it serves little useful purpose to debate whether it would have been better for Kirby to have used a walker rather than a wheelchair.

The authorities cited by Bell are all distinguishable. Bell cites 58 Am. Jur.2d, *New Trial* §§ 101, 158 (1971), in support of the proposition that fraud on the part of the adverse party may constitute grounds for a new trial. The simple answer is that no fraud was proved in this case. *Gaiter* v. *Winn Dixie Stores, Inc.*, 376 So.2d 912 (Fla. App. 1979), is factually distinct. It involved a party who was shown to have lied to the jury. *Noble* v. *McAllister Dairy Farms, Inc.*, 114 N.E.2d 540 (Ohio 1952), is inapposite be-

cause it involved improper contacts between a party and two jurors. *Corley* v. *New York & H. R. Co.*, 42 N.Y. Supp. 941, 12 App. Div. 409 (1896), was a case of fraud. There, the plaintiff, who had recovered from his injuries, came into court on crutches and conducted himself in a manner calculated to make the jury conclude that he was still suffering from the accident that was the subject of the suit. *Fitzpatrick* v. *St. Louis-San Francisco Railway Co.*, 327 S.W.2d 801 (Mo. 1959), is of no greater value than defendant's other authorities. There, plaintiff sued for the loss of an eye. During plaintiff's case a blind man, carrying a white cane and a cigar box, was led into the courtroom by a guide and took a seat behind the plaintiff. It was established that plaintiff's counsel had invited the blind man to meet him at court. The Supreme Court of Missouri concluded, on the facts, that the display was calculated to create sympathy and may have done so. Here, no such finding was made, the use of the wheelchair was found not to be unnecessary and unreasonable, and adequate safeguards were instituted by the trial court.

Bell further complains that plaintiff's counsel should not have been permitted to mention the amount sued for. On oral argument defendant's counsel admitted that he was aware that *State Farm Ins. Co.* v. *Futrell*, 209 Va. 266, 163 S.E.2d 181 (1968), and *Phillips* v. *Fulghum*, 203 Va. 543, 125 S.E.2d 835 (1962), permit counsel to mention the amount sued for. Nevertheless, Bell invites us to overrule *Phillips* and *Futrell*. We decline his invitation.

Bell next contends that it was error for the trial court to grant an instruction which would allow for a recovery based on future pain and suffering. The precise language of the instruction complained of by Bell is as follows:

> any physical pain and mental anguish she suffered in the past and any she may be reasonably expected to suffer in the future.

Bell contends that there was no evidence of future pain and suffering. Bell is wrong. First, the instruction speaks of "pain and mental anguish" not "pain and suffering." Second, Kirby's doctor testified that she sustained a permanent sensory loss in her knee. Kirby testified that her knee had been numb and remained numb. This is enough evidence to raise a jury question of future physical

pain and mental anguish. Moreover, as plaintiff's counsel pointed out in oral argument, the jury witnessed Kirby display her scarred right knee. There was no testimony the scar would ever be removed. From this the jury might conclude that there would be future mental anguish associated with living with a disfigured right knee. This issue then was properly before the jury.

Finally, Bell complains that it was error for the trial court to allow plaintiff to amend her pleadings to increase the *ad damnum* from $50,000.00 to $100,000.00 two days before the trial. Rule 1:8 gives the trial court discretion to allow amendment of pleadings. By its own terms, Rule 1:8 says such leave is liberally to be granted. Here there was no showing of abuse of discretion by the trial court.

In light of the foregoing, the judgment of the trial court will be

*Affirmed.*