COURT OF APPEALS OF VIRGINIA


Present:  Judges Elder, Frank and Senior Judge Hodges
Argued at Richmond, Virginia


RUSSELL STOVER CANDIES AND
 TIG PREMIER INSURANCE COMPANY
                                         OPINION BY
v.   Record No. 0402-99-2          JUDGE LARRY G. ELDER
                                       OCTOBER 26, 1999
SARAH R. ALEXANDER


          FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

          S. Vernon Priddy, III (Patsy L. Mundy; Sands,
          Anderson, Marks & Miller, on briefs), for
          appellants.

          Nora J. Miller (Watson & Nelson, P.C., on
          brief), for appellee.


     Russell Stover Candies and TIG Premier Insurance Company

(collectively employer) appeal a decision of the Workers'

Compensation Commission (commission) awarding disability

compensation and medical benefits to Sarah R. Alexander

(claimant) for an injury by accident which occurred on March 18,

1996.  On appeal, employer contends the commission erred (1) in

interpreting Commission Rule 3.2 as directory rather than

mandatory and, therefore, in not dismissing claimant's appeal

when she failed to file a written statement; and (2) in holding

that credible evidence established that claimant experienced a

compensable injury by accident which prevented her from

returning to work for employer.  For the reasons that follow, we disagree and affirm the commission's award.

I.

FACTS

On March 18, 1996, while working on an assembly line in employer's chocolate manufacturing plant, claimant smelled the strong odor of bleach and experienced a "real bad asthma attack" for which she sought immediate medical treatment.  Claimant reported to the employer's nurse, Amanda Snead, that she was experiencing shortness of breath and tightness in her chest due to the strong bleach smell.  Snead ultimately sent claimant to the emergency room, where she was diagnosed as having an acute asthma attack.  She received multiple medications and was told to remain home from work the following day.

Claimant said she had smelled bleach in the plant on other occasions during her six-year employment there but that it had not been as strong as it was on March 18, 1996.  Other witnesses confirmed smelling bleach that day.  Nurse Snead smelled bleach in the plant that day.  Claimant's co-worker, Brenda Chambers, also smelled the strong odor of bleach and had a headache as a result of the smell.  Claimant complained to her supervisor, Nora Small, who determined that the smell was emanating from a nearby trash compactor being cleaned with bleach.

Prior to March 18, 1996, claimant had mild asthma for which she used an inhaler about once a year.  She had not sought

-

medical treatment for her asthma for about ten years. Following the March 18 incident, claimant saw her personal physician; on March 22, 1996, employer sent claimant to Dr. Earle Moore, the company doctor. Moore returned claimant to work, but she experienced a total of about twelve additional asthma attacks of increasing severity which were triggered by bleach, smoke or other inhalants. Dr. Moore referred her to a pulmonologist, Dr. Terrence Truitt. Dr. Truitt diagnosed her as having "[e]pisodic bronchospastic symptoms consistent with occupational induced asthma in a patient with mild underlying asthma." He also noted claimant's report that cleaning solutions and dust from plant construction continued to bother her at work but that "for the most part she is fine when she is out of the work environment." He recommended that she try to wear a mask at work "to help cut down on the exposure intensity" and that she use her inhaler before entering the workplace each day. Claimant said the mask caused her to have more asthma attacks.

When exposed to bleach on the night of April 30 to May 1, 1996, claimant again went to the emergency room where she was diagnosed with reactive airway disease and told to see a specialist.

On May 16, 1996, claimant had another asthma attack at work, and Dr. Moore excused her from work on May 17. On May 20, she was moved from "the choker pad" to the back room, where she worked for two days, but she continued to have problems. On May

-

22, 1996, claimant had another bad asthma attack and was placed on medical leave.  On May 28, 1996, Dr. Moore opined that claimant's asthma was triggered by some inhalant in the plant and that, effective May 26, 1996, she could not work in an environment containing fumes, smoke or other irritants.

Dr. Truitt, who examined claimant again on February 3, 1997, opined that her pre-existing asthma was benign until her March 1996 exposure at work.  He also opined that, although her subsequent symptoms were "fairly well-controlled with aggressive bronchodilator and inhaled steroid therapy," she was disabled from returning to her pre-injury work environment and had been so disabled since her symptoms developed in the spring of 1996.  Claimant testified that exposure to "any smoke, anything, will trigger [her asthma] now" and that, as a result, she "can't do nothing but stay at home."  At the time of the hearing claimant was earning $80 per week by baby-sitting in her home.

Employer offered the written opinion of Dr. John Catlett, an allergist, who reviewed claimant's records but did not examine her.  Catlett opined that claimant suffered from allergic asthma and allergic rhinitis and that "her main problem is allergic."  He also opined that, while "[o]dors at work may make her wheeze more[, they] are not the cause of her asthma."  Finally, he noted that claimant had normal pulmonary function tests following her March 1996 attack and that her condition

-

seemed to have worsened after she stopped working at employer's plant.

The deputy commissioner held that claimant failed to prove her asthma was an occupational disease rather than an ordinary disease of life and that it could not be an injury by accident because the commission previously had held that asthma, by its very nature, results from cumulative trauma.

Claimant timely filed a request for review by the full commission. The commission ordered claimant to file a written statement in support of her request, but she failed timely to do so. Employer moved to dismiss claimant's request for review based on her failure to file a written statement pursuant to Commission Rule 3.2. Alternatively, employer argued that the deputy commissioner's decision should be affirmed and should provide the basis for the commission's decision. Subsequently, without mentioning employer's motion, the commission considered the appeal on the merits. It affirmed the deputy's ruling that claimant failed to prove an occupational disease but held that claimant established an injury by accident which occurred "'immediately' upon [her] smelling bleach that was stronger than usual." As a result, it entered an award for the requested benefits.

Employer appealed to this Court, contending that the commission erred in failing to rule on employer's motion to dismiss. Claimant contended that the commission's failure to

-

address the motion to dismiss constituted a ruling that Rule 3.2 is "directory, not mandatory."  However, in a memorandum opinion, we noted that "the commission seems to have adopted an opposite interpretation in previous cases . . . [holding that] issues not addressed in the written statements are waived and abandoned."  See Russell Stover Candies v. Alexander, No. 0045-98-2, 1998 WL 463454, at *1 (Va. Ct. App. Aug. 11, 1998).  Based on the principle that the commission should "have the first opportunity to construe its own rules," we remanded to the commission "with instructions to clarify its treatment of employer's motion to dismiss and its interpretation of Rule 3.2."  Id.

On remand, the commission denied employer's motion and observed the following:

> As the Court [of Appeals] noted, the Commission may construe its own rules.  The Commission's rules regarding post-hearing procedures are contained in Rules 3.1 – 3.4.  Rule 3.1 addresses the requirement that parties assign specific errors in request for Review.  The rule states:
>
> > Failure of a party to assign any specific error in its request for review may be deemed by the Commission to be a waiver of the party's right to consideration of that error.  The Commission may however, on its own motion, address any error and correct any decision on review if such action is considered to be necessary for just determination of the issues.
>
> [emphasis added].

-

Rule 3.2 states that written statements submitted by the parties "shall address the errors assigned."

The Commission reads Rule 3.2 in conjunction with Rule 3.1, and we conclude that while we have the authority to deem waived any assignment of error not specifically identified in the Request for Review or specifically addressed in a written statement, we retain the right to, on our own motion, "address any error and correct any decision" if necessary for a just determination of the issues. Thus, the waiving of assignments of error is not automatic but is within the Commission's discretion.

The Commission's construction of Rule 3 is such that parties are not required to file written statements on review. The provision in Rule 3.2 stating that these statements shall address all errors assigned is directory, not mandatory. If a party requesting review does not file a written statement, the appellee may nonetheless file a written brief in support of its position.

The Commission is not bound by formal rules of evidence and procedure, but conducts its proceedings in a summary manner in order to most efficiently administer the Act and do justice for all parties.

II.

ANALYSIS

A.

NECESSITY OF WRITTEN STATEMENT UNDER COMMISSION RULE 3.2

Employer contends the commission erred in interpreting Rule 3.2 to allow claimant's appeal to the full commission to proceed despite her failure to file a written statement supporting her

-

position.  It contends that the commission applies Rule 3.2 to favor claimants and that employers "face[] the strictest application of the rule," which violates the due process clauses of the United States and Virginia Constitutions.  We disagree.

The commission's rules provide, in relevant part, as follows:

> 3.1 Request for Review
>
> *       *       *       *       *       *       *
>
> A request for review should assign as error specific findings of fact and conclusions of law.  Failure of a party to assign any specific error in its request for review may be deemed by the Commission to be a waiver of the party's right to consideration of that error.  <u>The Commission may, however, on its own motion, address any error and correct any decision on review if such action is considered to be necessary for just determination of the issues</u>.
>
> *       *       *       *       *       *       *
>
> 3.2 Written Statements
>
> The Commission will advise the parties of the schedule for filing brief written statements supporting their respective positions.  The statements shall address all errors assigned, with particular reference to those portions of the record which support a party's position.

Virginia Workers' Comp. Comm'n Rules 3.1, 3.2 (emphasis added), <u>reprinted</u> <u>in</u> <u>Virginia Court Rules and Procedure:  1994</u>, at 984-85 (West 1993).  The commission revised and renumbered its rules in 1994.  The quoted portion of Rule 3.1 derives from former Rule 2(A); Rule 3.2 was added in 1994.  <u>See</u> Rule 2(A)

-

(effective October 1, 1991), reprinted in Virginia Court Rules and Procedure: 1993, at 948 (West 1992); Rules 3.1, 3.2 (effective January 1, 1994), reprinted in Virginia Court Rules and Procedure: 1994, at 984-85 (West 1993).

We previously have held, in keeping with the commission's interpretation here, that "Rule [3.1] does not create an absolute requirement that parties specify [in their requests for review] each determination of fact or law to which exception is taken." Seneca Falls Greenhouse & Nursery v. Layton, 9 Va. App. 482, 484, 389 S.E.2d 184, 185-86 (1990). We also have noted that

> the rule must be applied equally to all parties irrespective of whether they be claimant or employer/insurer. The Fourteenth Amendment declares that all persons, including corporations, irrespective of status, are entitled to equal protection of laws. Thus, if the . . . Commission imposes sanctions for the failure to follow the specific provisions of Rule [3.1] dealing with specification of exceptions, the sanctions may not be applied arbitrarily to parties based upon their position in the case or whether they are represented by counsel.

Id. at 484-85, 389 S.E.2d at 186 (citation omitted). However, we further held in Seneca Falls that

> [i]f the specificity requirement of Rule [3.1] has not been applied consistently to all persons in the past, irrespective of their position, be they claimant or employer/insurer, the rule, nevertheless, should not be applied to bar Mr. Layton's appeal since we agree with the . . . Commission that the provisions of Rule [3.1]

-

> at issue in this case do not require
> specification in all cases. In other words,
> these appellants were not aggrieved by the
> ruling of the commission.

Id. at 485, 389 S.E.2d at 186.

We conclude that the commission's construction of Rule 3.2 in conjunction with Rule 3.1's provisions permitting the commission to address and correct, sua sponte, any errors of the deputy commissioner is reasonable and does not violate due process or equal protection under the facts of this case.[1] Rule 3.2 contains no express requirement that the parties either "shall" or "should" file written statements. Rather, it states that the commission will notify the parties of the schedule for filing such statements and that the statements "shall" address all errors assigned. It does not, however, address the ramifications of failing to file a written statement, and Rule 3.1 explicitly provides that the commission may correct any errors "necessary for just determination of the issues."

---

[1] Although employer bases its argument on "due process," it relies on our holding in Seneca Falls, 9 Va. App. at 483-85, 389 S.E.2d at 185-86, which deals expressly only with equal protection. We presume that employer is alleging a violation of substantive due process, which requires, inter alia, that a statute or rule be "'neither arbitrary nor discriminatory.'" King v. Virginia Birth-Related Neurological Injury Comp. Program, 242 Va. 404, 412, 410 S.E.2d 656, 661 (1991) (quoting Duke v. County of Pulaski, 219 Va. 428, 437-38, 247 S.E.2d 824, 829 (1978)). For the reasons discussed in the text and footnotes, infra, we hold that neither the challenged rules nor the commission's application of them in this case was arbitrary or discriminatory.

-

Employer contends the commission applies this provision arbitrarily, to the advantage of claimants and disadvantage of employers. It cites two decisions of the commission as examples of the supposed disparate treatment: Terry v. Coe, No. 171-49-16, 1996 WL 107645 (Va. Workers' Comp. Comm'n May 30, 1996), which involved an employer's request for review, and Quinones v. Guest Services, Inc., No. 176-82-89, 1997 WL 1080585 (Va. Workers' Comp. Comm'n Jan. 31, 1997), which involved a claimant's request for review. We do not believe these decisions are inconsistent. In both cases, the party requesting review failed timely to file a written statement, and in both cases the commission ruled that failure constituted a waiver and abandonment of the petition for review. Finally, in both cases, despite the party's waiver, the commission reviewed the record and found no basis for reversing the deputy commissioner's decision.[2] See Terry, 1996 WL 107645, at *1 ("On review, we find

_____

[2] Employer contends that Terry is distinguishable because it also involved a request for review filed by the Uninsured Employer's Fund, which timely filed a written statement supporting its request. However, the Fund challenged only the admissibility and sufficiency of evidence to prove the claimant was disabled during a particular period. Employer challenged multiple additional issues, including whether the commission had jurisdiction; whether claimant's injury resulted from willful misconduct; and whether the employer had been misidentified in claimant's pleadings. Before outlining the Fund's argument, the commission noted, despite employer's failure to file a written statement, "that the Deputy Commissioner's findings and conclusions are justified and supported by the record" and that it observed "no error that would warrant reversal." Finally, after making these findings, the commission specifically addressed employer's misidentification argument, holding that,

-

that the Deputy Commissioner's findings and conclusions are justified and supported by the record, and we note no error that would warrant reversal."); Quinones, 1997 WL 1080585, at *1 n.2 ("We have, [despite waiver], independently reviewed the entire record in the matter, and find no reason to reverse the opinion of the Deputy Commissioner.").

We note further that the commission appears to have interpreted Rule 3.2 consistently since its adoption in 1994. In Stowers v. KVAT Food Stores, Inc., No. 168-39-76, 1994 WL 1038235 (Va. Workers' Comp. Comm'n Nov. 9, 1994), for example, the commission held that although Rule 3.2 provides for the

---

if error occurred, it was harmless.  Only after making clear that it had considered employer's request for review on the merits did it advance to the error assigned by the Fund.
    Employer also contends that in Buck v. Virginia Design Packaging Corp., No. 176-16-44, 1996 WL 1076346 (Va. Workers' Comp. Comm'n Dec. 3, 1996), the commission treated a claimant who failed to file a written statement more favorably because he was unrepresented.  In Buck, the commission held that Buck had waived any error because he failed to assign specific error under Rule 3.1 and failed to file a written statement.  See id. at *1.  It did note that it "conducted a thorough review of the record" because claimant was unrepresented.  See id.  Although this statement may appear to favor unrepresented claimants, the commission, in fact, followed this same procedure in Stowers v. KVAT Food Stores, Inc., No. 168-39-76, 1994 WL 1038235, at *1 (Va. Workers' Comp. Comm'n Nov. 9, 1994) (denying claimant's motion to dismiss and considering employer's request for review on the merits), in which a represented employer failed to file a written statement, and in Kuhn v. Battlefield Painters, Inc., No. 185-14-63, 1998 WL 1004174, at *1 (Va. Workers' Comp. Comm'n July 6, 1998) (where corporate officer, a non-lawyer, filed written statement which was considered the unauthorized practice of law and, therefore, could not be considered, commission conducted "independent review of the record"), in which an unrepresented employer failed to file a written statement.

-

submission of written statements by the parties, "such statements are not required. The Rule is directory in nature, rather than mandatory." Id. at *1. As a result, the commission "decline[d] to penalize the carrier with dismissal" for the late filing of its written statement, and it reviewed the case on the merits. Id.; see also Dixon v. Toano Middle Sch., No. 166-32-37, 1995 WL 1063947, at *1 (Va. Workers' Comp. Comm'n Apr. 18, 1995) (holding, in case in which claimant filed no written statement, that failure to file written statement "should not serve as an independent basis to dismiss the review" and reviewing the case on the merits).[3]

---

[3] As set out above, the commission may exercise its discretion in determining whether to dismiss a request for review based on failure to file a written statement as long as it does not do so "arbitrarily . . . based upon [an improper factor such as the parties'] position in the case or whether they are represented by counsel." Seneca Falls, 9 Va. App. at 485, 389 S.E.2d at 186. The commission might well be justified, for example, in dismissing a request for review based on a party's failure to file a written statement on a particularly difficult issue despite repeated orders from the commission to do so. Despite an extended review of the commission's decisions in cases in which one or both parties failed to file a written statement, we are aware of no inconsistent or arbitrary action on the part of the commission, and employer has cited no decisions which we view as arbitrary or inconsistent. See Higgins v. Stanley Martin Homes, No. 171-73-71, 1998 WL 1003529, at *1 (Va. Workers' Comp. Comm'n Apr. 16, 1998) (involving pro se claimant and represented employer, both of whom failed to file written statements); Garner v. Schmidt Baking Co., No. 171-39-83, 1998 WL 1003571, at *1 (Va. Workers' Comp. Comm'n Apr. 23, 1998) (same but both parties represented); Jackson v. Alexandria Transit Co., No. 178-87-12, 1997 WL 1081035, at *1 (Va. Workers' Comp. Comm'n Apr. 18, 1997) (same but both parties represented). Similarly, and despite employer's claim to the contrary, we detect no arbitrary inconsistency in the commission's handling of cases in which a party files a written

-

Finally, even assuming the commission has applied Rule 3.2 inconsistently in the past, our holding in <u>Seneca Falls</u> makes clear that inconsistent application of the rule does not require dismissal of claimant's appeal to the commission. <u>See</u> 9 Va. App. at 485, 389 S.E.2d at 186. As we held above, Rule 3.2 does not mandate that a party appealing a deputy's ruling must file a timely written statement or face dismissal. Rather, as we have observed, once a request for review has been filed, the commission may "address any error and correct any decision . . . necessary for just determination of the issues," even if no written statement has been filed. Rule 3.1. Here, because we hold that credible evidence supports the commission's finding of an ongoing disability causally related to claimant's compensable injury by accident, <u>see</u> <u>infra</u> § II.B., Rules 3.1 and 3.2, read in harmony, permitted the commission to address the deputy's error to achieve a "just determination of the issues." Therefore, here, as in <u>Seneca Falls</u>, the commission did not act

statement but does not discuss therein all errors previously assigned in the request for review. <u>See</u>, <u>e.g.</u>, <u>Hale v. Roadway Package Sys.</u>, No. 185-67-89, 1998 WL 1004045, at *2 (Va. Workers' Comp. Comm'n Aug. 3, 1998) (represented claimant); <u>Staton v. Craver & Co.</u>, No. 173-66-34, 1998 WL 1002625, at *1 n.1 (Va. Workers' Comp. Comm'n Mar. 17, 1998) (represented employer); <u>Hazelwood v. Dan River, Inc.</u>, No. 180-74-36, 1998 WL 1003845, at *1 (Va. Workers' Comp. Comm'n June 26, 1998) (holding both represented parties abandoned issues mentioned in request for review but not addressed in their written statements and considering only those issues covered in written statements).

arbitrarily, and this employer was not aggrieved by the commission's ruling. See 9 Va. App. at 485, 389 S.E.2d at 186.

B.

CREDIBLE EVIDENCE TO SUPPORT FINDING OF INJURY BY ACCIDENT

Employer contends the commission erred in holding that claimant is entitled to ongoing temporary disability benefits because the evidence "solely established a contraindication to [claimant's] returning to the workplace due to sensitivity to unknown environmental conditions at the workplace rather than an actual, ongoing disability to work." At most, it contends, she suffered from a temporary aggravation of a pre-existing, ordinary disease of life and is not entitled to additional benefits. Again, we disagree.

Guided by well established principles, we construe the evidence in the light most favorable to the party prevailing below, claimant in this instance. See Crisp v. Brown's Tysons Corner Dodge, Inc., 1 Va. App. 503, 504, 339 S.E.2d 916, 916 (1986). "If there is evidence, or reasonable inferences can be drawn from the evidence, to support the Commission's findings, they will not be disturbed on review, even though there is evidence in the record to support a contrary finding." Morris v. Badger Powhatan/Figgie Int'l, Inc., 3 Va. App. 276, 279, 348 S.E.2d 876, 877 (1986); see Code § 65.2-706. "The actual determination of causation is a factual finding," Ingersoll-Rand Co. v. Musick, 7 Va. App. 684, 688, 376 S.E.2d 314, 317 (1989),

-

and "[t]he testimony of a claimant may . . . be considered in determining causation, especially where the medical testimony is inconclusive," Dollar Gen. Store v. Cridlin, 22 Va. App. 171, 176-77, 468 S.E.2d 152, 154-55 (1996).  Further, "[a] question raised by conflicting medical opinion is a question of fact." Commonwealth v. Powell, 2 Va. App. 712, 714, 347 S.E.2d 532, 533 (1986) (citations omitted).

The evidence, viewed in the light most favorable to claimant, supports the commission's finding that her inhalation of bleach fumes on March 18, 1996 constituted an injury by accident, which employer appears to concede.  See Aistrop v. Blue Diamond Coal Co., 181 Va. 287, 294, 24 S.E.2d 546, 549 (1943) (where disability results from inhalation of gases "at a particular time and on a particular occasion which can be fixed with reasonable certainty," event is an "injury by accident"). Claimant, who had mild asthma which bothered her only once a year, experienced a "real bad asthma attack" immediately after her exposure to the strong odor of bleach on March 18, 1996, an odor which was strong enough to be noticed by co-workers and to give one of them a headache.  Claimant's attack was severe enough to cause employer's nurse to send claimant for treatment at a hospital emergency room.  Although claimant's condition improved, she was able to return to work only sporadically and noted a significantly increased susceptibility to asthma

-

resulting from exposure to various inhalants, including bleach, dust and smoke.

Further, credible evidence supports a finding that claimant's bleach exposure on March 18, 1996 aggravated her "benign" pre-existing asthma and that this work-related exposure has caused an ongoing disability preventing claimant from returning to her pre-injury employment.  See Ohio Valley Constr. Co. v. Jackson, 230 Va. 56, 58, 334 S.E.2d 554, 555 (1985) (holding that disability from industrial injury which accelerates or aggravates a pre-existing condition is compensable).  One of claimant's treating physicians, Dr. Moore, the "company doctor," stated expressly that claimant "can not work in an environment where there are fumes, smoke or other particulate matter in the air," and he opined that she was disabled from May 26, 1996, forward.  That Dr. Moore may elsewhere have termed his work restriction a "recommendation" is not dispositive.  In addition, Dr. Truitt, a pulmonologist who treated claimant on referral from Dr. Moore, opined that "certainly there was a precipitating element in the work environment at Russell Stover Candies that exacerbated [claimant's] previously quiescent asthma," and he "strongly advised [claimant] to avoid any and all exposure to what has previously been documented to cause significant bronchospasm." That the record may contain contrary evidence from employer's physician, Dr. Catlett, also is not dispositive.

-

Employer contends that claimant's case is governed by the reasoning in <u>Castle v. Westvaco Container Division</u>, No. 139-64-20, 1990 WL 752231, at *6 (Va. Workers' Comp. Comm'n Apr. 23, 1990), in which the commission held that "compensation benefits cannot be continued based on a personal susceptibility to a possible subsequent respiratory reaction if the [employee] returns to the work environment."  Although we are not bound by decisions of the commission, the facts in <u>Castle</u> nevertheless are distinguishable from those here.  In <u>Castle</u>, which involved an occupational disease resulting from exposure to an industrial chemical, the commission found that the employee was asymptomatic and that his pulmonary function had returned to normal."  <u>Id.</u>  In claimant's case, by contrast, the record contains evidence that claimant's asthma has not returned to the "benign" status it occupied before her injury by accident on March 18, 1996.  Claimant had an average of one attack a year prior to her injury by accident; within ten weeks following that injury, she had twelve asthma attacks of increasing severity at work and required ongoing "aggressive bronchodilator and inhaled steroid therapy" to control her symptoms even outside the workplace.  Claimant testified that, prior to March 18, she was able to endure exposure to cigarette smoke and other inhalants without significant difficulty but that exposure to "any smoke, anything, will trigger [her asthma] now" such that she "can't do nothing but stay at home."  Finally, both "the company doctor"

-

and the pulmonologist to whom he referred the claimant opined that claimant is disabled from returning to her pre-injury work environment.  These facts provide sufficient credible evidence to support the commission's award.

For these reasons, we affirm the commission's award of disability compensation and medical benefits.

<u>Affirmed.</u>