COURT OF APPEALS OF VIRGINIA


Present: Chief Judge Fitzpatrick, Judges Elder and Agee
Argued by teleconference


CLINTON FELTON JEFFERSON
                                    MEMORANDUM OPINION* BY
v.    Record No. 2318-01-3          JUDGE G. STEVEN AGEE
                                         APRIL 16, 2002
SERVITEX, INC. AND
 HARTFORD CASUALTY INSURANCE COMPANY


           FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

              Stephen G. Bass (Carter, Craig, Bass, Blair
              & Kushner, P.C., on briefs), for appellant.

              Richard D. Lucas (Lucas & Associates, on
              brief), for appellees.


     Clinton Felton Jefferson (the claimant) appeals the

decision of the Workers' Compensation Commission (the

commission) denying his claim for disability benefits from

Servitex and its insurer, Hartford Casualty Insurance Company,

(herein, collectively, referred to as "the employer").  He

contends the commission erred in finding that he failed to

reasonably market his residual work capacity.  Pursuant to Rule

5A:21(d), the employer raises the additional questions of

whether (1) the commission erred in finding the claimant's

injury arose out of his employment and (2) the claimant was

---

     * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

entitled to temporary total disability benefits for September 12-26, 2000. Upon review, we affirm the commission's decision.

## I. BACKGROUND

As the parties are fully conversant with the record in this case and because this memorandum opinion carries no precedential value, only those facts necessary to a disposition of this appeal are recited.

The claimant worked as a route salesman for the employer. His job duties included the delivery of laundered linens to clients and the pick-up of the client's soiled linens. On April 13, 2000, the claimant backed his delivery vehicle up to a client's loading dock which was two and one-half to three feet above the bed of the vehicle.

The claimant went through the building to open the loading dock door. As was his normal practice, he then stepped down backwards from the loading dock into the bed of the vehicle. His left knee gave and, as he tried to recover, his left leg gave out causing the claimant to fall backwards. He did not slip or trip.

After a few minutes of lying on the vehicle bed's floor, the claimant rose and attempted unsuccessfully to work.

Dr. Campbell treated the claimant that day and informed him that he had arthritis in his left knee. The examination reflected degenerative changes in the knee with a history of gout. The physician recommended the claimant not work for a few

-

days.  On April 21, 2000, Dr. Campbell examined the claimant again and released him to return to regular work.

From April 21, 2000, through late August 2000, the claimant, suffering pain in his left knee, continued treatment with Dr. Campbell.  He worked his regular job during that period of time, except for three days.

On September 12, 2000, Dr. Campbell saw the claimant who complained of knee pain and walked with a stiff gait.  An MRI revealed a partial MCL tear.  The physician provided claimant with a leave slip that read, "this is to certify that [the claimant] is physically unable to return to work from Sept. 1, 00 until next appt.  Next appointment-Sept. 27, 00 @ 10:00."  On September 27, 2000, the claimant was placed on light duty restrictions, but the employer did not have a light duty position for him.

The claimant did not seek subsequent employment prior to December 14, 2000.  Between December 14, 2000, and January 3, 2001, he contacted nine companies, which employed friends or acquaintances, but none of the nine companies were hiring. Claimant began to make these contacts after filing for benefits with the Virginia Employment Commission, which requires benefit recipients to contact at least two potential employers per week. No other efforts to find employment were made by the claimant. The claimant testified that he was unaware that he was required

-

to seek employment in order to be entitled to workers' compensation benefits.

In addition to the testimony of the claimant and a representative for the employer, the deputy commissioner reviewed Dr. Campbell's submitted responses to questionnaires provided to him from each party.  On the questionnaire from the claimant, the physician indicated his agreement to the following statement:

> It is my opinion with a reasonable degree of medical certainty or probability that the incident, described by [the claimant] as occurring on April 13, 2000[,] and in which he twisted his left knee at work stepping down from a loading dock to the rear of a truck, aggravated his pre-existing arthritis and caused a strain of his medical [sic] collateral ligament.

On the questionnaire from the employer, the physician indicated his agreement with this statement:

> [Y]ou did not believe [the claimant] was totally disabled but was capable of doing light duty work, including sedentary work, and that you have never told [the claimant] that he was totally disabled from all employment.

The deputy commissioner found the claimant had suffered a compensable injury arising out of and in the course of his employment; that he was entitled to temporary total disability benefits for the period September 12-26, 2000; he was not entitled to benefits for the period September 27, 2000, through December 13, 2000, due to his failure to market his residual

-

work capacity; and that he was entitled to benefits, commencing December 14, 2000, through January 4, 2001, for reasonably marketing his remaining work capacity.

Upon review, the full commission found the claimant had proven that he suffered a compensable injury; was entitled to temporary total disability benefits for the period September 12-26, 2000; and that the claimant failed to market his residual work capacity commencing December 14, 2000.

Both parties now challenge the award in different respects.

## II.  A COMPENSABLE INJURY

We begin our review with the employer's contention that the commission erred in finding the claimant suffered a compensable injury arising out of his employment.  It argues the claimant is not entitled to benefits because he failed to meet his burden of proving the injury he suffered was due to a risk of employment. For the following reasons, we affirm the commission's decision.

"In order to recover on a workers' compensation claim, a claimant must prove: (1) an injury by accident, (2) arising out of and (3) in the course of his employment."  Kane Plumbing, Inc. v. Small, 7 Va. App. 132, 135, 371 S.E.2d 828, 830 (1988); see Code § 65.2-101.  "The phrase arising 'in the course of' refers to the time, place, and circumstances under which the accident occurred," while "arising 'out of' refers to the origin or cause of the injury."  County of Chesterfield v. Johnson, 237 Va. 180, 183, 376 S.E.2d 73, 74 (1989).

-

"The mere happening of an accident at the workplace, not caused by any work related risk or significant work related exertion, is not compensable." Plumb Rite Plumbing Serv. v. Barbour, 8 Va. App. 482, 484, 382 S.E.2d 305, 306 (1989). A claimant must establish "that the conditions of the workplace or . . . some significant work related exertion caused the injury." Id. Thus, "the arising out of test excludes 'an injury which comes from a hazard to which the employee would have been equally exposed apart from the employment. The causative danger must be peculiar to the work, incidental to the character of the business, and not independent of the master-servant relationship.'" Johnson, 237 Va. at 183-84, 376 S.E.2d at 75 (quoting United Parcel Service v. Fetterman, 230 Va. 257, 258-59, 336 S.E.2d 892, 893 (1985)).

"The actual determination of causation is a factual finding that will not be disturbed on appeal," if supported by credible evidence. Ingersoll-Rand Co. v. Musick, 7 Va. App. 684, 688, 376 S.E.2d 814, 817 (1989); see Code § 65.2-706. However, "[w]hether an injury arises out of and in the course of employment is a mixed question of law and fact . . . , reviewable upon appeal." Jones v. Colonial Williamsburg Found., 8 Va. App. 432, 434, 382 S.E.2d 300, 301 (1989).

The claimant's testimony constitutes credible evidence to support the commission's factual findings. The claimant stated that when he stepped down from the loading dock, which was two

-

and one-half to three feet higher than the bed of the truck, into the bed of the truck his left knee went out from under him and he fell backwards. The claimant was not simply walking, bending or turning when his knee gave way. Rather, the commission could reasonably infer from the evidence that claimant's employment-related need to get into the bed of the truck resulted in his knee injury. "Where reasonable inferences may be drawn from the evidence in support of the commission's factual findings, they will not be disturbed by this Court on appeal." Hawks v. Henrico County Sch. Bd., 7 Va. App. 398, 404, 374 S.E.2d 695, 698 (1988). Here, the evidence supported an inference that the conditions of employment either caused or contributed to the claimant's injury.

The commission's factual findings are supported by the record and properly establish an injurious activity arising from a work-related risk, compensable under the Act. Compare Southside Va. Training Center/Com. v. Ellis, 33 Va. App. 824, 829, 537 S.E.2d 35, 37 (2000) (denying compensation resulting from "bending to pick up a tray," a movement "neither unusual, awkward, nor something that employee was required to do on a repetitive basis"), with Richard E. Brown, Inc. v. Caporaletti, 12 Va. App. 242, 245, 402 S.E.2d 709, 711 (1991) (finding "cutting and fitting" motions of employee, while leaning over during installation of a furnace, a condition of employment with attendant risk of injury).

-

Accordingly, the evidence supports the commission's determination that the claimant's injury arose out of his employment, and we affirm the related award.

### III.  TEMPORARY TOTAL DISABILITY BENEFITS

The employer contends the commission erred in finding the claimant was entitled to temporary total disability benefits for the period September 12-26, 2000.  Finding the commission's decision supported by the evidence, we disagree.

On appeal, we view the evidence in the light most favorable to the prevailing party below.  See R.G. Moore Bldg. Corp. v. Mullins, 10 Va. App. 211, 212, 390 S.E.2d 788, 788 (1990).  On this particular contention, the claimant prevailed before the commission, and we review the evidence in the light most favorable to him.  Factual findings made by the commission will be upheld on appeal if supported by credible evidence, even if there is evidence in the record to support a contrary finding. Russell Stover Candies v. Alexander, 30 Va. App. 812, 825, 520 S.E.2d 404, 411 (1999).  We will "not retry the facts, reweigh the preponderance of the evidence, or make [our] own determination of the credibility of the witnesses."  Wagner Enters., Inc. v. Brooks, 12 Va. App. 890, 894, 407 S.E.2d 32, 35 (1991).  Consequently, where the commission resolves a conflict in medical evidence, on appeal the medical issue will not be "settled by judicial fiat," and the commission's decision is binding so long as it is supported by credible evidence.

-

<u>Stancill v. Ford Motor Co.</u>, 15 Va. App. 54, 58, 421 S.E.2d 872, 874 (1992).  "This rule applies when an expert's opinion contains internal conflict."  <u>Greif Companies/Genesco, Inc. v. Hensley</u>, 22 Va. App. 546, 552, 471 S.E.2d 803, 806 (1996).

In support of its argument that the claimant is not entitled to temporary total disability benefits, the employer contends the physician's agreement with its submitted partial statement, "you have never told [the claimant] that he was totally disabled from all employment," belies an award of benefits for temporary total disability benefits.  We disagree.

In awarding claimant temporary total disability benefits for the period of September 12-26, 2000, the commission found as follows:

> [T]he December 27, 2000, affirmation is contradicted by the September 12, 2000, disability slip that Dr. Campbell signed after examining the claimant that day.  The September 12, 2000, disability slip is consistent with the treatment notes, which reflect that his condition has "become more symptomatic."  It is also contemporaneous with the period in question.  Therefore, we agree with the [deputy commissioner's] finding that the claimant was temporarily and totally disabled from September 12 through September 26, 2000.

The commission's factual findings are supported by credible evidence, including the medical records, leave slip and claimant's testimony.  Based upon that evidence, the commission could reasonably conclude that claimant was temporarily and

-

totally disabled from September 12, 2000, through September 26, 2000.

#### IV. THE FAILURE TO MARKET RESIDUAL CAPACITY

The claimant contends the commission erred in finding that he did not reasonably market his residual work capacity between December 14, 2000, and January 4, 2001. We disagree.

A partially disabled employee is required to make reasonable efforts to market his residual earning capacity to be entitled to receive continued benefits. See National Linen Serv. v. McGuinn, 8 Va. App. 267, 269, 380 S.E.2d 31, 33 (1989). "In determining whether a claimant has made a reasonable effort to market his remaining work capacity, we view the evidence in the light most favorable to . . . the prevailing party before the commission." Id. at 270, 380 S.E.2d at 33. "What constitutes a reasonable marketing effort depends upon the facts and circumstances of each case." Greif Companies (GENESCO) v. Sipe, 16 Va. App. 709, 715, 434 S.E.2d 314, 318 (1993).

Failure of a partially disabled employee to satisfy the duty to make reasonable efforts to market residual work capacity results in a temporary suspension of benefits. Great Atl. & Pac. Tea Co. v. Bateman, 4 Va. App. 459, 464, 359 S.E.2d 98, 100 (1987). "It is not required that a workers' compensation claimant who suffers partial disability be informed by her physician that [he or] she may undertake restricted work in order for her to be obligated to make reasonable efforts to

-

market her residual skills." Ridenhour v. City of Newport News, 12 Va. App. 415, 416, 404 S.E.2d 89, 89 (1991). The claimant is required to make reasonable efforts to market his or her remaining work capacity when under all the facts and circumstances, the claimant should reasonably and objectively perceive that he or she can return to gainful employment. See id. at 418, 404 S.E.2d at 90; Bateman, 4 Va. App. at 467, 359 S.E.2d at 102.

The claimant contacted nine potential employers between December 14, 2000, and January 3, 2001. The only reason the nine were contacted was because the Virginia Employment Commission, from which the claimant sought unemployment benefits, required he contact at least two employers per week. All nine were employers he knew personally, and none of these were hiring. The claimant did not fill out any employment applications. There is no evidence that he sought employment elsewhere, that he approached potential employers with actual job openings, or that he even looked into job listings in a newspaper or other readily available resource.

The commission found that the claimant's efforts were not reasonable. Credible evidence, i.e., the claimant's testimony and his minimal list of contacts, supports the commission's finding. Therefore, the commission's decision will not be disturbed on appeal.

Affirmed.

-