COURT OF APPEALS OF VIRGINIA


Present:  Judges Benton, Willis and Senior Judge Hodges
Argued at Richmond, Virginia


HERCULES, INC. AND
 AQUALON COMPANY

                                        MEMORANDUM OPINION* BY
v.    Record No. 2747-01-2          JUDGE JAMES W. BENTON, JR.
                                           MAY 14, 2002
ALLEN W. McLEAN


            FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

            Gretchen M. Greisler (James G. Muncie, Jr.;
            Midkiff, Muncie & Ross, P.C., on brief), for
            appellants.

            B. Mayes Marks, Jr. (Marks and Williams,
            P.C., on brief), for appellee.


     The issues raised by this appeal are whether the Workers'

Compensation Commission erred in finding (1) that Allen W.

McLean proved by a preponderance of the evidence he was totally

disabled and (2) that McLean's disability was causally related

to his injury by accident.  We affirm the commission's award of

benefits to McLean.

                              I.

     "On appeal, we view the evidence in the light most

favorable to [McLean], the party prevailing before the

commission."  Great Eastern Resort Corp. v. Gordon, 31 Va. App.

_____

     * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

608, 610, 525 S.E.2d 55, 56 (2000).  So viewed, the evidence proved McLean worked as a senior lab analyst for Hercules, Inc., a chemical manufacturing company, when he experienced an injury by accident.  McLean and the employer signed a memorandum of agreement, which indicates that on October 26, 1998, McLean "inhaled an excess amount of nitric-acid fumes causing a chemical induced asthmatic bronchitis."  The commission approved the memorandum of agreement and awarded McLean temporary partial disability benefits beginning October 27, 1998 and medical benefits.  In July of 2000 and February of 2001, McLean filed change-in-condition claims requesting temporary total disability benefits from July 17, 2000 through September 4, 2000 and continuing from January 19, 2001.

At the evidentiary hearing, the deputy commissioner recited various stipulations, including the parties' agreement that McLean was totally disabled from July 17 through September 4, subject to the employer's defense that McLean's disability was not causally related to the October 26, 1998 injury by accident. In addition to challenging the causal connection, the employer alleged that McLean was not totally disabled beginning January 19, 2001.  Presenting no witnesses, both parties submitted the case for decision and relied on the medical reports and the stipulations.  Upon this evidence, the deputy commissioner found that McLean's disability was causally related to the October 26, 1998 injury by accident and that McLean proved temporary total

-

disability from July 17, 2000 through September 4, 2000 and beginning January 19, 2001 and continuing.

The employer sought review by the commission only on the issues whether McLean was totally disabled beginning January 19, 2001 and whether the disability was causally related to the October 26, 1998 injury by accident. Upon its review of the medical evidence, the commission found that on November 2, 1998, Dr. Peter N. Ault, a physician at the employer's first aid station, diagnosed McLean as suffering from occupational exposure to nitric acid fumes causing asthmatic bronchitis. On February 24, 2000, Dr. Ault further opined that McLean was suffering from reactive airway disease resulting from this exposure. Dr. Ault removed McLean from work on February 24, 2000 and determined on February 28, 2000 that McLean was "totally incapacitated at this time." A pulmonary function test, which Dr. Ault ordered in June 2000, indicated that McLean's data were "suggestive of restrictive lung disease." Dr. Ault returned McLean to sedentary work with restrictions on September 5, 2000. In each instance, Dr. Ault opined that McLean's condition was causally related to the October 26, 1998 injury by accident.

Dr. Alpha A. Fowler, a pulmonary internist, examined McLean and opined on November 12, 1999, that McLean

> continues to manifest problems that are
> likely downstream from nitric acid exposure
> one year ago . . . . [I]t is now time for

-

                    the patient to discontinue his work at the
                    plant and to come out of any situation that
                    would result in fume exposure because of the
                    potential for long-term devastating
                    consequences . . . should exposure continue.

On March 31, 2000, Dr. Fowler opined McLean was "disabled and

unable to work."  Dr. Fowler also opined that "[d]ue to the

nonspecific nature of his reactivity to the environment I find

that increased exposure will only result in increasing problems

and likely deteriorating health status."

     In March 2000, Dr. Ming S. Chiu, a pulmonary internist,

examined McLean on various occasions and reported that McLean

was not a smoker, that McLean had no prior respiratory symptoms

until the exposure to the chemical on October 26, 1998, that

McLean suffered from reactive airway disease, and that McLean

was "quite symptomatic."  Dr. Chiu also noted that McLean's

condition had "retrogressed."  In September 2000, Dr. Chiu

reported that McLean's cough was worsening and again noted

"reactive airway disease."  In a letter dated January 19, 2001,

Dr. Chiu reports that McLean has been under his care for

reactive airway disease, that McLean has persistent cough and

shortness of breath, and that McLean "is totally disabled from

any type of work."

     The commission found that McLean became totally disabled as

of January 19, 2001 and that his condition was causally related

to the October 26, 1998 work incident.  This appeal followed.

                                  -

II.

The employer contends "[t]he medical evidence . . . shows that [McLean] was not totally disabled as of January 19, 2001." This contention lacks merit.

> Our review of the disability issue is governed by familiar principles. Factual findings made by the Commission are "conclusive and binding" and a question raised by conflicting medical opinion is a question of fact. We do not judge the credibility of witnesses or weigh the evidence on appeal. "[I]t is our duty to determine whether credible evidence supports the Commission's finding . . . and, if such evidence exists, to sustain the finding."

Celanese Fibers Co. v. Johnson, 229 Va. 117, 120-21, 326 S.E.2d 687, 690 (1985) (citations omitted).

In its role as fact finder, the commission was entitled to weigh the medical evidence. Indeed, the principle is long standing that "[m]edical evidence is not necessarily conclusive, but is subject to the commission's consideration and weighing." Hungerford Mechanical Corp. v. Hobson, 11 Va. App. 675, 677, 401 S.E.2d 213, 214 (1991). The commission reviewed the medical evidence and found that both Dr. Fowler and Dr. Chiu opined that McLean was totally disabled. Dr. Chiu specifically reported on January 19, 2001, that McLean "has been under [Dr. Chiu's] care" and "is totally disabled from any type of work." Thus, credible evidence supports the commission's finding that McLean was totally disabled at that date and continuing.

-

III.

The employer next contends that McLean's "alleged disability is not causally related to his industrial accident." This contention likewise lacks merit.

On our review, we apply the following standards:

> The commission's determination of causation is a finding of fact. The factual findings of the commission are conclusive and binding on appeal if supported by credible evidence in the record. "The fact that there is contrary evidence in the record is of no consequence if there is credible evidence to support the commission's finding." "This rule applies when an expert's opinion contains internal conflict." "Likewise, the [c]ommission's conclusions upon conflicting inferences, legitimately drawn from proven facts, are equally binding on appeal." "In determining whether credible evidence exists, the appellate court does not retry the facts, reweigh the preponderance of the evidence, or make its own determination of the credibility of the witnesses."

Henrico County Sch. Bd. v. Etter, 36 Va. App. 437, 443-44, 552 S.E.2d 372, 375 (2001) (citations omitted).

The employer argues that the pulmonary function test proves McLean's disability was "the result of his obesity or extraparenchymal restriction." That report contains the following item:

> IMPRESSION: The [test] data is suggestive of restrictive lung disease, flow volume also supports this finding. It seems like the patient has an extraparenchymal cause of restriction. The differential diagnosis

-

> includes obesity versus musculoskeletal disorders. I would suggest to correlate clinically.

The report does not indicate that McLean's exposure to the nitric acid did not damage his lungs. As the deputy commissioner found, this report does not indicate "a clear opinion whether [McLean's] disability is caused by the work accident." The commission found that the pulmonary test results were merely "suggestive of restrictive lung disease" and found that the report does not contradict the finding that McLean's injury was caused by the work incident.

Moreover, even if we view this report, as does the employer, as establishing a conflict in the medical evidence, "a finding by the Commission upon conflicting facts as to causal relationship is conclusive and binding on this Court, absent fraud, when such determination is supported by competent, credible evidence." C.D.S. Constr. Services v. Petrock, 218 Va. 1064, 1070, 243 S.E.2d 236, 240 (1978). The commission found that "[e]ach physician noted [McLean's] work-related exposure to nitric acid in 1998." The reports of Dr. Chiu and Dr. Fowler make that diagnosis and clearly support the commission's finding. Thus, credible evidence in the record establishes that McLean's exposure to chemicals caused airway disease. See Russell Stover Candies v. Alexander, 30 Va. App. 812, 826-28, 520 S.E.2d 404, 411-12 (1999) (affirming award to an employee suffering from reactive airway disease as a result of exposure

-

to bleach).  Significantly, the medical reports indicate McLean "had no prior history of respiratory symptoms until the exposure to the chemical."

The commission's findings are supported by each of the physician's findings, including Dr. Ault's reports.  The record establishes that after Dr. Ault received the pulmonary test report, he reported on August 31, 2000 that McLean had "reactive airway disease" and that it was due to his "occupational injury."  He made no finding attributing McLean's injury to any other cause.  Indeed, his opinions indicate that when he returned McLean to sedentary work in September 2000 McLean's condition was causally related to McLean's "work-related exposure to nitric acid fumes of October 26, 1998."

We hold, therefore, that credible evidence in the record supports the commission's award.

Affirmed.