COURT OF APPEALS OF VIRGINIA


Present:  Judges Willis, Bumgardner and Agee
Argued at Salem, Virginia


HAROLD D. CRISLIP

                                              OPINION BY
v.    Record No. 2276-00-3           JUDGE G. STEVEN AGEE
                                          OCTOBER 30, 2001
COMMONWEALTH OF VIRGINIA


           FROM THE CIRCUIT COURT OF ROCKINGHAM COUNTY
                   Porter R. Graves, Jr., Judge

           James N. Dickson, III, for appellant.

           Richard B. Smith, Senior Assistant Attorney
           General (Mark L. Earley, Attorney General, on
           brief), for appellee.


     Harold D. Crislip (Crislip) was convicted in a Rockingham

County Circuit Court bench trial on two counts of assaulting a

police officer, in violation of Code § 18.2-57(C), and sentenced

to serve a term of six months incarceration on each conviction.

He contends his actions were reasonable and permissible because

he was the subject of an illegal arrest.  We disagree and affirm

the convictions.

                        I.   BACKGROUND

     On April 7, 2000, at 3:00 a.m., Sergeant M.E. Baylor of the

Rockingham County Sheriff's Office responded to a possible

domestic dispute at the Crislip residence, which is a mobile

home in an "upscale mobile home park."  Upon his arrival,

Sergeant Baylor found Mrs. Crislip and her children outside the

mobile home in the driveway, "trying to get back in their house."  Mrs. Crislip informed the officer that her husband was intoxicated and his condition forced her out of the home. Sergeant Baylor, with Mrs. Crislip's permission and accompanied by her, went inside the mobile home where he found Crislip unsteady on his feet and his speech slurred.  After assessing the situation, the officer instructed Crislip to go to bed to which Crislip agreed.

Deputy Greer then arrived on the scene and the two officers conferred on the front deck/porch of the Crislip mobile home, just outside the front door.  The front porch was in open view of the public road approximately 60 feet away and clearly visible to a number of neighboring homes in close proximity in the mobile home park.  The officers then heard a crashing noise and observed Crislip lying on the living room floor and mumbling.  He then started to get up and his wife quickly went out the front door with Crislip following her onto the front porch.

Deputy Greer then informed Crislip that he was under arrest for being drunk in public.  Crislip started to head towards the front door but an officer blocked his path and informed him that he would have "to go with us."  Crislip put his hands out and Deputy Greer placed handcuffs on him.  Crislip then began to swing at the officers with his cuffed hands, striking both officers.  The officers attempted to further restrain Crislip,

-

resulting in a scramble on the floor of the porch and onto the gravel driveway.  Crislip, while lying on the gravel, proceeded to kick the officers until subdued by pepper spray.

## II.  ANALYSIS

Crislip contends his arrest for being drunk while in public was unlawful because his front porch cannot be considered "in public" and, therefore, he had the right to reasonably resist the arrest and cannot be convicted for assault.  Essentially, Crislip argues that the words "in public" under Code § 18.2-388 are synonymous with the words "public place," as that term is defined in Code § 4.1-100.  From that supposition, Crislip argues his front porch was not a public place and, therefore, the arrest was unlawful.  Extrapolating further, Crislip contends that because his arrest was unlawful, he had the right to resist with reasonable force.  We disagree.

### A.  Standard of Review

On appeal, we view the evidence in the light most favorable to the prevailing party, in this instance the Commonwealth, and grant to it all reasonable inferences fairly deducible therefrom.  See Commonwealth v. Jenkins, 255 Va. 516, 521, 499 S.E.2d 263, 265 (1998).  "The judgment of a trial court sitting without a jury is entitled to the same weight as a jury verdict, and will not be disturbed on appeal unless plainly wrong or without evidence to support it."  Beck v. Commonwealth, 2 Va. App. 170, 172, 342 S.E.2d 642, 643 (1986).  The lawfulness of an

-

arrest and the reasonableness of force used to resist an arrest present mixed questions of law and fact and are reviewed de novo. See Brown v. Commonwealth, 27 Va. App. 111, 117, 497 S.E.2d 527, 530 (1998); see also Fuller v. Commonwealth, 201 Va. 724, 729-30, 113 S.E.2d 667, 671 (1960) (finding that under the facts of the case the lawfulness of the arrest was a question of law).

### B. "In Public" under Code § 18.2-388

The dispositive question in this matter is whether Crislip was "in public" while intoxicated on his front porch.[1] Code § 18.2-388 states, in pertinent part, that "[i]f any person . . . is intoxicated in public . . . he shall be guilty of a Class 4 misdemeanor." No definition is provided in the statute or in Title 18.2 for the term "in public." Apparently, the meaning of the words "in public," in the context of Code § 18.2-388, is a question of first impression in the Commonwealth.

Crislip argues that with no statutory definition of the term "in public," we should read it as meaning "public place," which is a defined term under Code § 4.1-100. In that statute, "public place" is defined as "any place, building, or conveyance to which the public has, or is permitted to have, access, including restaurants, soda fountains, hotel dining areas,

_____

[1] Crislip does not challenge the fact that he was intoxicated at the time of his arrest.

-

lobbies, and corridors of hotels, and any highway, street, lane, park, or place of public resort or amusement."  Because the front porch of Crislip's residence is not such a "public place," Crislip reasons he was not "in public" for purposes of the public drunkenness statute.

Such a reading is erroneous for at least two reasons. First, Code § 4.1-100 limits its definitions of terms, including "public place," to Title 4.1, applying the provisions of the Alcoholic Beverage Control Act.  There is no nexus in statute or case law between the provisions of Titles 4.1 and 18.2 to substantiate the argument to transmorph the definition of non-identical terms in one to the other.  Crislip has provided no authority to support an in pari materia reading of the term "public place" in Code § 4.1-100 with the term "in public" under Code § 18.2-388.

The General Assembly did not intend for the two terms to be synonymous.  This intent is evidenced by its choice of words, "in public," in Code § 18.2-388 and its choice of words, "public place," in Code § 18.2-387[2] (indecent exposure), which, like Code § 18.2-388, is in Article 5 ("Obscenity and Related Offenses")

_____

[2] This distinction is made even clearer as Code § 18.2-387 specifically adds to places where indecent exposure is prohibited, "any place where others are present."  See Code § 18.2-387 ("Every person who intentionally makes an obscene display or exposure of his person, or the private parts thereof, in any public place, or in any place where others are present, or procures another to so expose himself, shall be guilty of a Class 1 misdemeanor.").

-

of Title 18.2.  "The manifest intention of the legislature, clearly disclosed by its language, must be applied."  Anderson v. Commonwealth, 182 Va. 560, 566, 29 S.E.2d 838, 841 (1944).

Second, the statutory language of Code § 18.2-388 is clear, and we must give the words their plain meaning.  See Portsmouth v. Chesapeake, 205 Va. 259, 269, 136 S.E.2d 817, 825 (1969); Tross v. Commonwealth, 21 Va. App. 362, 377-78, 464 S.E.2d 523, 530 (1995).  "'[T]he province of construction is wholly within the domain of ambiguity, and that which is plain needs no interpretation.'"  Barnett v. D.L. Bromwell, Inc., 6 Va. App. 30, 34, 366 S.E.2d 271, 273 (1988) (quoting Winston v. City of Richmond, 196 Va. 403, 407-08, 83 S.E.2d 728, 731 (1954)).  "'Non-technical words in statutes are taken to have been used in their ordinary sense and acceptation.'"  Gomes v. City of Richmond, 220 Va. 449, 452, 258 S.E.2d 582, 584 (1979) (quoting Board of Supervisors v. Boaz, 176 Va. 126, 130, 10 S.E.2d 498, 499 (1940)).

The term "in public" is an ordinary, everyday expression with a plain meaning.  "In" is "a functional word to indicate location."  Webster's Third New International Dictionary 1139 (1993).  Webster's defines "public" as "a place accessible or visible to all members of the community – usually used in the phrase in public."  Id. at 1836 (emphasis added).  Black's Law Dictionary similarly defines "public" as "a place open or visible to the public <in public>."  Black's Law Dictionary 1242

-

(7th ed. 1999) (emphasis added).  The plain meaning of "in public," therefore, is a place in open view, visible to the community.  The legislature clearly evinced a different intent when it enacted Title 4.1 and provided a specific definition of the term "public place."

"Where the legislature has used words of a plain and definite import the courts cannot put upon them a construction which amounts to holding the legislature did not mean what it has actually expressed."  Dominion Trust Co. v. Kenbridge Constr., 248 Va. 393, 396, 448 S.E.2d 659, 660 (1994) (citations omitted).  "In public," under Code § 18.2-388, is not limited to places open to public accessibility, and the plain language of the statute does not place such a limitation on "in public." Applying the plain meaning of the term "in public" in the text of Code § 18.2-388 shows that Crislip, on his front porch in open view of nearby neighboring homes and the public street, was in a place visible to the public for purposes of the statute. Crislip was "in public" and intoxicated.

Our case law and that of other jurisdictions support a determination that one may be guilty of a public offense while on one's own premises.  In Hackney v. Commonwealth, 186 Va. 888, 45 S.E.2d 241 (1947), the Supreme Court of Virginia held that where a man, standing on his own porch, uttered loud, boisterous, vile and abusive language at a passerby, his actions constituted disorderly conduct committed in public.  In Ridley

-

v. State, 337 S.E.2d 382 (Ga. Ct. App. 1985), the defendant's conviction for public intoxication, committed by being drunk in his front yard, was upheld by the Court of Appeals of Georgia. That court held that "it is clear that one's premises are not necessarily circumscribed from inclusion . . . [o]nly areas of privacy are excluded."[3]  Id. at 383.  See also City of Fairborn v. Semler, 629 N.E.2d 481 (Ohio Ct. App. 1993) (noting that the defendant who was just outside his house was in public for purposes of the locality's disorderly conduct law).

Crislip, who conceded he was intoxicated, was in public for purposes of the statute.  As a law enforcement officer may arrest without a warrant any person who commits an offense in his presence under Code § 19.2-81, the arrest of Crislip was lawful.  Accordingly, Crislip was not legally entitled to resist the arrest, and his actions amounted to assault and battery on two law enforcement officers, in violation of Code § 18.2-57(C). Crislip's convictions are affirmed.

Affirmed.

---

[3] The Georgia statute at issue in Ridley, OCGA § 16-11-41(a), makes it a crime to "be and appear in an intoxicated condition in any public place . . . ."  A "public place" is statutorily defined as "any place where the conduct involved may reasonably be expected to be viewed by people other than members of the actor's family or household."  OCGA § 16-1-3(15).