COURT OF APPEALS OF VIRGINIA

Present: Judges Kelsey, Haley and Senior Judge Bumgardner
Argued by teleconference

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
v.      Record No. 2093-08-3                     JUDGE D. ARTHUR KELSEY
                                                 JANUARY 13, 2009
WILLIAM LARRY LASLEY


FROM THE CIRCUIT COURT OF RUSSELL COUNTY
Michael L. Moore, Judge

Benjamin H. Katz, Assistant Attorney General (Robert F.
McDonnell, Attorney General, on brief), for appellant.

Jay H. Steele for appellee.


Pursuant to Code § 19.2-398(A)(2), the Commonwealth appeals a pretrial order granting

a suppression motion in this case. The trial court held a police officer exceeded the permissible

scope of a weapons frisk during a pat down of William Larry Lasley. Because probable cause

principles authorized the officer's action as a search incident to Lasley's arrest, we reverse and

remand for trial.

I.

Charged with distribution of a Schedule III drug, Lasley filed a pretrial motion to

suppress two hydrocodone pills discovered in his pocket the night he was arrested. Lasley

claimed the arresting officer violated Terry v. Ohio, 392 U.S. 1 (1968), by conducting a weapons

frisk without any reasonable suspicion that Lasley was armed and dangerous.

The Commonwealth defended the search by offering the arresting officer's testimony.

Consistent with his written report, attached as an exhibit to Lasley's motion, the officer testified

that in the early morning of October 28, 2007, around 4:00 a.m. he noticed a stopped pickup

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

truck in a motel parking lot. Observing three individuals in the truck's cab, the officer parked his police vehicle and walked up to the truck. Through the open window, the officer noticed that one of the three, Lasley, appeared to have "bloodshot eyes" and showed "indicators of intoxication." Lasley's movements were "real lethargic," and he held an open can of beer between his legs. Several empty cans were visible on the floor of the truck cab.

Suspecting Lasley of being intoxicated, the officer asked him to step out of the truck. Outside the truck cab, Lasley appeared "very unsteady on his feet" and could not "stand up straight." Lasley spoke but used "very slurred speech." Despite the officer's several requests that he not do so, Lasley "consistently kept putting his hands in his pockets." Fearing for his safety, the officer searched Lasley's pockets. The officer found no weapons but discovered two hydrocodone pills. He then arrested Lasley for public intoxication and drug possession.

In support of the motion to suppress, Lasley argued the officer violated the Terry limitations on a weapons frisk. The Commonwealth responded that the recovery of the hydrocodone pills could be justified as a search incident to arrest. Lasley disagreed, arguing:

> This is not a search incident to an arrest, which would have made this search absolutely proper, because you discern intent from action, and if [the officer] had felt at that time, that at 4:00 o'clock in the morning, that this guy was drunk in public, the proper thing to do would have been to say, "Mr. Lasley, you're under arrest for being intoxicated in public . . . and do a pat down and a search, a full search, and we wouldn't be having this conversation. It's the order in which the things happened that make . . . that compel that this evidence be suppressed.

>       *     *     *     *     *     *     *

> Again, I don't know what was in [the officer's] mind, but intent is proven by action and if he'd intended to arrest him for drunk in public, then he would have arrested him for drunk in public right then, and after that, everything is proper under the Constitution. But the way in which this came about, the order of the acts, makes this a violation both under the Federal Constitution and State Constitution . . . .

The trial court adopted Lasley's reasoning and granted the motion to suppress. As the court explained, "clearly, the proper course would have been if the officer was going to arrest the defendant, was to inform him he was going to be arrested and then . . . and then do a search incident to arrest; and I assume that it's possible all of this could have been done, I mean that whatever was found could have been found inevitably." In its written order, the court held the "officer exceeded the scope of a 'pat-down' search for weapons" when he retrieved the two hydrocodone pills from Lasley's pocket. See Pretrial Order at 5 (Aug. 20, 2008).

II.

On appeal, the Commonwealth contends the trial court misapplied Fourth Amendment principles by focusing on the police officer's subjective intentions and by mistakenly concluding that a search preceding a formal arrest cannot be a search incident to arrest. We agree the trial court erred in both respects.

A. THE FOURTH AMENDMENT'S OBJECTIVE STANDARD

"Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis." Whren v. United States, 517 U.S. 806, 813 (1996); Robinson v. Commonwealth, 273 Va. 26, 37, 639 S.E.2d 217, 223 (2007) (holding that an arresting officer's "subjective motivation is irrelevant" (citation omitted)). Under settled principles, an officer's "action is 'reasonable' under the Fourth Amendment, regardless of the individual officer's state of mind, 'as long as the circumstances, viewed *objectively*, justify [the] action.'" Brigham City v. Stuart, 547 U.S. 398, 404 (2006) (emphasis in original and citations omitted).

Thus, faced with a suppression motion, a court should not limit itself "to what the stopping officer says or to evidence of his subjective rationale," Raab v. Commonwealth, 50 Va. App. 577, 583 n.2, 652 S.E.2d 144, 148 n.2 (2007) (*en banc*) (citation omitted), but should look instead to what a reasonable, objective officer could have concluded from the totality of the

circumstances. "Just as a subjective belief by the arresting officer would not establish probable cause where none existed, a subjective belief by the arresting officer cannot destroy probable cause where it exists." United States v. Anderson, 923 F.2d 450, 457 (6th Cir. 1991).

Consequently, the trial court erred in concerning itself with the officer's intent at the time of the search. It is irrelevant whether the officer thought he lacked probable cause to arrest Lasley prior to the search, whether the officer intended to arrest Lasley after the search, or whether the officer believed his authority was limited to conducting a Terry weapons frisk. The only issue is a purely objective one: What arrest and search authority, if any, does the Fourth Amendment provide a reasonable officer under these circumstances?

### B. PROBABLE CAUSE TO ARREST & SEARCH

Under the Fourth Amendment, "[w]hen officers have probable cause to believe that a person has committed a crime in their presence, the Fourth Amendment permits them to make an arrest, and to search the suspect in order to safeguard evidence and ensure their own safety." Virginia v. Moore, 128 S. Ct. 1598, 1608 (2008), rev'g, 272 Va. 717, 636 S.E.2d 395 (2006). Consequently, the "standards traditionally governing a search incident to lawful arrest are not, therefore, commuted to the stricter Terry standards by the absence of probable fruits or further evidence of the particular crime for which the arrest is made." United States v. Robinson, 414 U.S. 218, 234 (1973). Because a legally justifiable arrest is itself a "reasonable intrusion under the Fourth Amendment," it follows that "a search incident to the arrest requires no additional justification." Id. at 235.

In addition, when "the formal arrest followed quickly on the heels of the challenged search," it is not "particularly important that the search preceded the arrest rather than vice versa," Rawlings v. Kentucky, 448 U.S. 98, 111 (1980), "so long as probable cause existed at the time of the search," Slayton v. Commonwealth, 41 Va. App. 101, 108, 582 S.E.2d 448, 451

(2003) (citation omitted). Nor does it matter whether the search occurs "at the moment the arresting officer takes the suspect into custody or when he announces that the suspect is under arrest." Italiano v. Commonwealth, 214 Va. 334, 337, 200 S.E.2d 526, 528 (1973) (citations omitted). The "best statement of this principle" puts the point this way:

> When the probable cause for an arrest exists independently of what the search produces, the fact that the search precedes the formal arrest is immaterial when the search and arrest are nearly simultaneous and constitute for all practical purposes but one transaction. To hold differently would be to allow a technical formality of time to control when there has been no real interference with the substantive rights of a defendant.

Id. at 337, 200 S.E.2d at 528-29 (citation omitted); see also Brown v. Commonwealth, 270 Va. 414, 418 n.1, 620 S.E.2d 760, 762 n.1 (2005) (finding it inconsequential that the officer "searched" the suspect "before officially arresting him").

Applying these principles, we hold probable cause existed as a matter of law to arrest Lasley for public drunkenness prior to his pat down. Code § 18.2-388 applies to intoxication as "a place in open view, visible to the community." Crislip v. Commonwealth, 37 Va. App. 66, 71, 554 S.E.2d 96, 98 (2001) (applying Code § 18.2-388 to a man "on his front porch in open view of nearby neighboring homes and the public street"); cf. Tjan v. Commonwealth, 46 Va. App. 698, 709, 621 S.E.2d 669, 674 (2005). "'Intoxicated' means a condition in which a person has drunk enough alcoholic beverages to observably affect his manner, disposition, speech, muscular movement, general appearance or behavior." Code § 4.1-100.

While in a motel parking lot, Lasley showed several "indicators of intoxication" including: bloodshot eyes, physical lethargy, an inability to stand upright, heavily slurred speech, an unsteadiness on his feet, and an open beer in his possession. Given the flexible nature of probable cause, a reasonable police officer would have had ample grounds to arrest Lasley for violating Code § 18.2-388 and to search him incident to the arrest. See, e.g., Fierst v.

- 5 -

Commonwealth, 210 Va. 757, 760, 173 S.E.2d 807, 810 (1970) (holding that a suspect's slumped posture in the car, wan or drunken appearance, "mumbly" speech, inability to locate his license, and need for assistance in exiting the car were sufficient indicators of intoxication to warrant his arrest); Clarke v. Commonwealth, 32 Va. App. 286, 296, 527 S.E.2d 484, 489 (2000) (holding that a suspect's bloodshot eyes and erratic speech pattern and the odor of alcohol about his person provided probable cause to arrest him for public intoxication).[1]

The presence of probable cause moots Lasley's argument that the officer exceeded the permissible scope of a weapons frisk. See, e.g., Bunch v. Commonwealth, 51 Va. App. 491, 495, 658 S.E.2d 724, 725-26 (2008). The power to arrest and search incident to arrest necessarily subsumes the power to stop and frisk. Nothing in Terry, after all, burdens a search incident to arrest with the limitations "placed on a stop-and-frisk search permissible without probable cause." Robinson, 414 U.S. at 228. That conclusion renders it unnecessary to address Lasley's argument that the "search of the defendant's person was not valid as a stop and frisk or pat-down search." Italiano, 214 Va. at 335, 200 S.E.2d at 527.[2]

---

[1] The standard for probable cause is not calibrated to "deal with hard certainties, but with probabilities." Slayton, 41 Va. App. at 106, 582 S.E.2d at 450 (citation omitted). Nor does it "demand any showing that such a belief be correct or more likely true than false." Id. (quoting Texas v. Brown, 460 U.S. 730, 742 (1983) (plurality)). "Finely tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence, useful in formal trials, have no place in the probable-cause decision." Maryland v. Pringle, 540 U.S. 366, 371 (2003) (citation and internal brackets omitted). Not even a "prima facie showing" of criminality is required. Illinois v. Gates, 462 U.S. 213, 235 (1983) (citation omitted). Instead, probable cause "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." Id. at 243 n.13. "The Constitution does not guarantee that only the guilty will be arrested." Baker v. McCollan, 443 U.S. 137, 145 (1979).

[2] The Commonwealth also argues that, even if the search were invalid, the inevitable discovery doctrine would preclude the application of the exclusionary rule. Given our holding, we need not address this issue. "In this case, as in all others, we seek to decide cases 'on the best and narrowest ground available' from the record." Kirby v. Commonwealth, 50 Va. App. 691, 702 n.2, 653 S.E.2d 600, 603 n.2 (2007) (citations omitted).

III.

Because the trial court erred as a matter of law in granting Lasley's motion to suppress, we reverse the suppression order and remand this case for trial.

<u>Reversed and remanded.</u>