COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Chief Judge Huff,[*] Judges Chafin and Decker
Argued at Richmond, Virginia


ESTATE OF JOSE FIDEL ARROYO

                                               MEMORANDUM OPINION[**] BY
v.        Record No. 1282-14-1              CHIEF JUDGE GLEN A. HUFF
                                                   FEBRUARY 3, 2015

CARLOS RAMIREZ AND
  AUTO OWNERS INSURANCE COMPANY


FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

        (Hugo R. Valverde; Valverde & Rowell, PC, on brief), for
        appellant.  Appellant submitting on brief.

        E. Albion Armfield (Overstreet Sloan, PLLC, on brief), for
        appellees.


The Estate of Jose F. Arroyo ("claimant") appeals a decision of the Virginia Workers'

Compensation Commission ("commission") denying its claim for benefits on the ground that

Jose Fidel Arroyo's ("Arroyo") injury did not arise out of his employment.  Claimant presents

two assignments of error on appeal:

> 1.  The [c]ommission erred in holding the [c]laimant's accident
> did not arise out of the employment when the [c]laimant
> established a causal connection between his injuries and the
> conditions under which the employer required the work to be
> performed, specifically that his injuries were caused by a fall
> from an unguarded elevator shaft.
>
> 2.  The [c]ommission erred in holding the presumption in . . .
> Code § 65.2-105 inapplicable when the [c]laimant was unable

---

[*] On Jauuary 1, 2015, Judge Huff succeeded Judge Felton as chief judge.

[**] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

> to testify because of his death and he presented prima facie evidence that his injuries were work related.

For the following reasons, this Court affirms the rulings of the commission.

## I. BACKGROUND

On appeals from the commission, "we review the evidence in the light most favorable to the prevailing party." R.G. Moore Bldg. Corp. v. Mullins, 10 Va. App. 211, 212, 390 S.E.2d 788, 788 (1990). If supported by credible evidence, the commission's factual findings are "binding on appeal," Tomes v. James City Fire, 39 Va. App. 424, 430, 573 S.E.2d 312, 315 (2002), "even though there is evidence in the record to support a contrary finding," Morris v. Badger Powhatan/Figgie Int'l, Inc., 3 Va. App. 276, 279, 348 S.E.2d 876, 877 (1986). When "determining whether credible evidence exists," we cannot "retry the facts, reweigh the preponderance of the evidence, or make [our] own determination of the credibility of the witnesses." Wagner Enters. v. Brooks, 12 Va. App. 890, 894, 407 S.E.2d 32, 35 (1991). In addition, the commission's "conclusions upon conflicting inferences, legitimately drawn from proven facts, are equally binding on appeal." Watkins v. Halco Eng'g, Inc., 225 Va. 97, 101, 300 S.E.2d 761, 763 (1983). So viewed, the evidence is as follows.

On the morning of June 7, 2012, Arroyo and his employer, Carlos Ramirez ("Ramirez"), arrived at a three-story residential building to install drywall. Arroyo and Ramirez were installing drywall on the third floor around noon when they took a break for lunch. One of the rooms in which they were working was located next to an elevator shaft that ran from the first floor to the third floor. Ramirez went out to his truck to get his lunch and returned to the second floor where he and his employees met to eat together. On the way back from his truck, Ramirez passed Arroyo, who was talking on his cell phone on the first floor and walking toward the restroom.

Ramirez continued to the second floor where he began eating lunch with his other employees. After about five minutes, when Arroyo had yet to join the group, Ramirez and his employees began inquiring of Arroyo's whereabouts, but they assumed he was in the restroom. Ramirez was expecting Arroyo to join the group because his lunch was with them on the second floor. A short time later, Ramirez heard an employee for another contractor "yelling" that something had happened to one of Ramirez's co-workers. Ramirez responded by looking down the elevator shaft where he saw Arroyo lying at the bottom. Ramirez then ran down the stairway to the first floor where he attempted to comfort Arroyo as another worker called 9-1-1. Ramirez testified that Arroyo was trying to "get up" and attempting to speak, but Ramirez could not understand him. Ramirez told Arroyo to be still and gave him a drink of water.

At the time of the accident, drywall had yet to be placed on the elevator shaft. Consequently, "it was exposed on [the] second floor." There was one guardrail "on the front [of the elevator shaft], but there [were no guardrails] on the sides." The day after the accident, the Virginia Department of Labor and Industry inspected the job site and cited Ramirez for multiple safety violations. Specifically, the citation alleged that "employees of [Ramirez] were performing residential construction activities, (drywall operations) at heights up to 19 feet 3 inches above the lower level without utilizing guardrails, safety nets or personal fall arrest systems." Additionally, the citation noted that "[e]mployees were performing residential drywall operations in close proximity of an open elevator shaft on the second floor of the structure that was about 9 feet 1&1/2 inches that was not properly guarded."[1]

An ambulance transported Arroyo to a nearby hospital. The medical record reflected that Arroyo suffered a fall and was diagnosed with an intracerebral hemorrhage, right pulmonary

_____

[1] Ramirez was also cited for two other safety violations for failing to provide safety training to his employees and failing to properly guard a stairway.

hemorrhage, multiple right side rib fractures, and a right clavicle fracture. He ultimately succumbed to his injuries and was pronounced dead at 5:55 p.m. on the day of the accident.

On June 20, 2013, Arroyo's wife and two children filed a claim for benefits seeking payment for medical care, reimbursement for funeral and transportation expenses, and 500 weeks of temporary total disability benefits beginning June 7, 2012. After a hearing on October 28, 2013, the deputy commissioner denied the claim. First, the deputy commissioner held that neither the death presumption nor the presumption found in Code § 65.2-105 was applicable to the present case. Next, the deputy commissioner held that under the "actual risk" test, there was insufficient evidence to support a reasonable inference that Arroyo's accident resulted from a risk or hazard of his employment.

This decision was appealed to the full commission, which affirmed the deputy commissioner in a 2-1 decision.[2] The commission's majority opinion agreed with the deputy commissioner that neither the death presumption nor the presumption in Code § 65.2-105 were applicable to the present case. The commission further concluded that an award for benefits under the actual risk test in the present case would "be impermissibly based on conjecture and speculation." This appeal followed.

## II. ANALYSIS

### A. Arising Out of and in the Course of Employment

On appeal, claimant first contends that the commission erred by failing to find that Arroyo suffered a compensable injury. Specifically, claimant argues the evidence established

---

[2] Commissioner Williams wrote the commission's majority opinion in which Commissioner Newman joined while Commissioner Marshall wrote the dissenting opinion.

- 4 -

that his injuries arose out of his employment because they were "caused by a hazard unique to the workplace."[3]

"Whether an injury arises out of and in the course of employment involves a mixed question of law and fact, which we review *de novo* on appeal." Blaustein v. Mitre Corp., 36 Va. App. 344, 348, 550 S.E.2d 336, 338 (2001) (citing Norfolk Cmty. Hosp. v. Smith, 33 Va. App. 1, 4, 531 S.E.2d 576, 578 (2000)); see also Dublin Garment Co. v. Jones, 2 Va. App. 165, 167, 342 S.E.2d 638, 638 (1986).

Under Virginia's workers' compensation statutes, "'injury' means only injury by accident arising out of and in the course of the employment . . . ." Code § 65.2-101. Thus, "[f]or an injury to be compensable under the Workers' Compensation Act, the claimant must prove by a preponderance of the evidence three elements: (1) that the injury was caused by an accident; (2) that the injury was sustained in the course of the employment; and (3) that the injury arose

---

[3] As an initial matter, Ramirez argues that claimant's appeal is barred by Rule 5A:18, which provides that

> [n]o ruling of the trial court or the Virginia Workers'
> Compensation Commission will be considered as a basis for
> reversal unless an objection was stated with reasonable certainty at
> the time of the ruling, except for good cause shown or to enable the
> Court of Appeals to attain the ends of justice.

The primary purpose of Rule 5A:18 is to advise the trial court or commission of the action complained of so that it "may rule intelligently and avoid unnecessary appeals, reversals and mistrials." Woodson v. Commonwealth, 211 Va. 285, 288, 176 S.E.2d 818, 820 (1970) (citing Reil v. Commonwealth, 210 Va. 369, 372, 171 S.E.2d 162, 164 (1969)).

In the present case, when appealing the deputy commissioner's decision to the full commission, claimant failed to file a written statement with the commission outlining the arguments on appeal as is required by Virginia Workers' Compensation Commission Rule 3.2. As the commission held, however, this failure "does not require that the appeal be dismissed when, as here, the claimant's request for review provides sufficient detail to determine the issues on review and there is no resulting prejudice to the employer." See Russell Stover Candies v. Alexander, 30 Va. App. 812, 821-22, 520 S.E.2d 404, 408-09 (1999). As such, the commission appropriately ruled on claimant's appeal, and the issue was adequately preserved for appeal. Rule 5A:18 does not bar this Court from considering claimant's appeal of that ruling.

out of the employment." Southland Corp. v. Parson, 1 Va. App. 281, 283-84, 338 S.E.2d 162, 163 (1985). "'The concepts "arising out of" and "in the course of" employment are not synonymous and both conditions must be proved before compensation will be awarded.'" PYA/Monarch & Reliance Ins. Co. v. Harris, 22 Va. App. 215, 221, 468 S.E.2d 688, 689 (1996) (quoting Marketing Profiles v. Hill, 17 Va. App. 431, 433, 437 S.E.2d 727, 729 (1993) (*en banc*)).

"In an unexplained fall case, such as this, '[a]n accident arises out of the employment when there is a causal connection between the claimant's injury and the conditions under which the employer requires the work to be performed.'" Liberty Mut. Ins. Corp. v. Herndon, 59 Va. App. 544, 556, 721 S.E.2d 32, 38 (2012) (quoting United Parcel Serv. of Am. v. Fetterman, 230 Va. 257, 258, 336 S.E.2d 892, 893 (1985)). Virginia adheres to the actual risk test to determine whether such a causal connection exists. Cnty. of Chesterfield v. Johnson, 237 Va. 180, 185, 376 S.E.2d 73, 75-76 (1989). In explaining the actual risk test, Virginia courts have stated on a number of occasions that

> "if the injury can be seen to have followed as a natural incident of the work and to have been contemplated by a reasonable person familiar with the whole situation as a result of the exposure occasioned by the nature of the employment, then it arises out of the employment. But [the actual risk test] excludes an injury which cannot fairly be traced to the employment as a contributing proximate cause and which comes from a hazard to which the workmen would have been equally exposed apart from the employment. The causative danger must be peculiar to the work and not common to the neighborhood. It must be incidental to the character of the business and not independent of the relation of master and servant. It need not have been foreseen or expected, but after the event it must appear to have had its origin in a risk connected with the employment, and to have flowed from that source as a rational consequence."

Simms v. Ruby Tuesday, Inc., 281 Va. 114, 122-23, 704 S.E.2d 359, 363 (2011) (quoting Bradshaw v. Aronovitch, 170 Va. 329, 335, 196 S.E. 684, 686 (1938)).

- 6 -

Under the actual risk test, "[w]here a claimant has sufficiently proved the existence of a causal relationship between the injury and a hazard in the workplace that is 'uniquely dangerous and not something that would routinely be encountered by anyone, the injury necessarily arises out of the employment.'" Herndon, 59 Va. App. at 559, 721 S.E.2d at 39 (quoting Turf Care v. Henson, 51 Va. App. 318, 326, 657 S.E.2d 787, 791 (2008)); see also Johnson, 237 Va. at 186, 376 S.E.2d at 76 (a "critical link" must exist between the conditions of the workplace and the injury in order for the injury to qualify as "arising out of" the employment). Accordingly, this Court has upheld awards in favor of claimants who have injured themselves by falling from high places – places those claimants' employment required them to be. See, e.g., Henson, 51 Va. App. at 326, 657 S.E.2d at 791 (upholding an award to claimant for an injury caused by a fall from a forty-foot ladder); Basement Waterproofing & Drainage v. Beland, 43 Va. App. 352, 354-55, 361, 597 S.E.2d 286, 287, 290 (2004) (similarly upholding an award to claimant for an injury caused by a fall from an eight-foot ladder). But if "a claimant cannot establish a causal relationship between a purported work hazard and his injury," then "the claimant cannot recover under the Workers' Compensation Act." Herndon, 59 Va. App. at 559-60, 721 S.E.2d at 40 (citing PYA/Monarch, 22 Va. App. at 219-21, 468 S.E.2d at 690-91).

For example, in PYA/Monarch, the claimant found himself lying on the ground outside of his truck with a head injury in icy conditions. 22 Va. App. at 219, 468 S.E.2d at 690. The claimant could not remember how he got to that location; instead, the last thing he could remember was beginning the process of exiting the truck cab. Id. There were no other witnesses to establish what happened to the claimant. Id. at 219-20, 468 S.E.2d at 690. Nevertheless, the claimant alleged that a design defect in the truck or the icy conditions caused him to fall seven feet from the truck cab to the ground. Id. The problem with the claimant's argument, however, was that no credible evidence established what had caused the claimant to fall; at best the

evidence only established that he had fallen based on the fact that he found himself inexplicably lying on the ground. Id. at 224-25, 468 S.E.2d at 692. Accordingly, the evidence in PYA/Monarch was insufficient for the fact finder to infer that the claimant's injury arose out of his employment because it was mere speculation that the claimant fell while exiting the cab of his truck due to a design defect in the truck or the weather conditions. Id. at 224-25, 468 S.E.2d at 692-93. While it is true that the commission may reasonably infer from facts presented that an injury stemmed from a work-related risk, such an inference must be supported by the evidentiary record and not based upon conjecture or speculation. Beland, 43 Va. App. at 358-59, 597 S.E.2d at 289.

In the present case, claimant argues that it would be a reasonable inference to conclude that a condition of Arroyo's employment – that is, the improperly guarded elevator shaft – caused Arroyo's fall and, thereby, his injuries. In PYA/Monarch, "[t]he commission was 'persuaded' that the icy conditions and design of the truck cab caused claimant's fall." 22 Va. App. at 224, 468 S.E.2d at 692. This Court reversed, however, because there was "no credible evidence [to] support[] this finding." Id. Specifically, this Court reasoned that the "mere fact that the truck cab was icy or that the cab was seven feet from the ground is insufficient to establish the basis for the fall." Id. Similarly, in the present case, there is no evidence to establish what Arroyo was doing at the time he fell, the location from whence he fell, or what, if anything, caused him to fall. Indeed, the evidence even failed to establish that Arroyo would have been required to pass by the elevator shaft on his way to meeting his co-workers for lunch. Consequently, any ruling that the improperly guarded elevator shaft caused Arroyo's fall

would not be a reasonable inference, but rather would be impermissibly based on conjecture and speculation.[4]

Without credible evidence demonstrating the cause of Arroyo's fall, claimant cannot establish the necessary "causal relationship" between Arroyo's employment and injury. Herndon, 59 Va. App. at 559, 721 S.E.2d at 39; see also Johnson, 237 Va. at 186, 376 S.E.2d at 76. Because there is an absence of such evidence, this Court affirms the commission's determination that Arroyo's injury did not arise out of his employment.

### B. Code § 65.2-105

Code § 65.2-105, as it existed at the time of Arroyo's injury, provided that

> [i]n any claim for compensation, where the employee is physically or mentally unable to testify as confirmed by competent medical evidence and where the factual circumstances are of sufficient strength from which the only rational inference to be drawn is that the accident was work related, it shall be presumed the accident was work related, unless such presumption is overcome by a preponderance of competent evidence to the contrary.[5]

The commission's majority opinion determined that "the presumption[] of . . . Code § 65.2-105" was "inapplicable in this case." Claimant assigns error to this determination.

The extent to which claimant's argument requires this Court to interpret Code § 65.2-105, this Court conducts a *de novo* review. Ford Motor Co. v. Gordon, 281 Va. 543, 549, 708 S.E.2d

---

[4] Nevertheless, claimant relies on Herndon, 59 Va. App. 544, 721 S.E.2d 32, asserting that, like Herndon, Arroyo's work required him to be in close proximity to an open and unprotected hazard, thereby providing sufficient causal connection to the injuries. In Herndon, however, the commission's finding of a causal connection was supported by credible evidence that Herndon had been "pulling wood" beside the second story opening and that the "only thing [he] can actually remember is carrying wood up to the guys making the walls." Id. at 561, 721 S.E.2d at 39. Conversely, in the case at bar, no evidence was provided to establish what Arroyo was doing or where he was at the time of the fall.

[5] Arroyo's injury occurred on June 7, 2012. Effective January 1, 2013, however, the statute was amended to replace "was work related" with "arose out of and in the course of employment" twice.

846, 849 (2011) (citing <u>Conyers v. Martial Arts World of Richmond</u>, 273 Va. 96, 104, 639

S.E.2d 174, 178 (2007)); <u>see also</u> <u>Scott v. Commonwealth</u>, 58 Va. App. 35, 48, 707 S.E.2d 17,

24 (2011) ("'an issue of statutory interpretation is a pure question of law which we review *de*

*novo*'" (quoting <u>Evans v. Evans</u>, 280 Va. 76, 82, 695 S.E.2d 173, 176 (2010))).

> "When the language of a statute is unambiguous, we are bound by the plain meaning of that language. Furthermore, we must give effect to the legislature's intention as expressed by the language used unless a literal interpretation of the language would result in a manifest absurdity. If a statute is subject to more than one interpretation, we must apply the interpretation that will carry out the legislative intent behind the statute."

<u>Scott</u>, 58 Va. App. at 48, 707 S.E.2d at 24 (quoting <u>Evans</u>, 280 Va. at 82, 695 S.E.2d at 176).

"Accordingly, '[t]he plain, obvious, and rational meaning of a statute is to be preferred over any

curious, narrow, or strained construction.'" <u>Id.</u> at 49, 707 S.E.2d at 24 (quoting <u>Evans</u>, 280 Va. at

82, 695 S.E.2d at 176 (alteration in original)). "'Where the legislature has used words of a plain

and definite import the courts cannot put upon them a construction which amounts to holding the

legislature did not mean what it has actually expressed.'" <u>Crislip v. Commonwealth</u>, 37

Va. App. 66, 71-72, 554 S.E.2d 96, 98 (2001) (quoting <u>Dominion Trust Co. v. Kenbridge</u>

<u>Constr.</u>, 248 Va. 393, 396, 448 S.E.2d 659, 660 (1994)).

The plain, obvious, and rational meaning of Code § 65.2-105 as expressed by the

language of the statute indicates that the General Assembly did not intend for the statute's

presumption to apply in situations where, as here, a claimant is unable to testify because he is

*deceased*. Rather, the statute's language indicates that the General Assembly intended for this

presumption to apply when a claimant is still alive at the time of the hearing, but for some

"physical[] or mental[]" reason is unable to testify.

Notably, the plain language provides as a threshold requirement that before the

presumption can apply, a claimant's inability to testify because of a "physical[] or mental[]"

- 10 -

condition must be "confirmed by competent medical evidence . . . ." Applying this threshold

requirement to a scenario where, as here, the claimant is deceased, the statute would require

proof via "medical" evidence that deceased people are, in fact, unable to testify. Such a

requirement would be "absurd[]." See Lucas v. Woody, 287 Va. 354, 360, 756 S.E.2d 447, 449

(2014) ("'we must give effect to the legislature's intention as expressed by the language used

unless a literal interpretation of the language would result in a manifest absurdity'" (quoting

Conyers v. Martial Arts World of Richmond, Inc., 273 Va. 96, 104, 639 S.E.2d 174, 178

(2007))).

Rather, the General Assembly intended the presumption of this statute to apply when a

claimant is still alive at the time of the hearing, but is "physically or mentally unable to testify as

confirmed by competent medical evidence . . . ." Code § 65.2-105. Nevertheless, to the extent

that Code § 65.2-105 is "'subject to more than one interpretation, we must apply the

interpretation that will carry out the legislative intent behind the statute.'" Scott, 58 Va. App. at

48, 707 S.E.2d at 24 (quoting Evans, 280 Va. at 82, 695 S.E.2d at 176). In the case at bar, Code

§ 65.2-105's legislative history supports our conclusion that the presumption is inapplicable.

Specifically, House Bill No. 1475, which was proposed by the House Committee on Commerce

and Labor on January 20, 2011, originally provided that

> [i]n any claim for compensation, *where the employee has been
> killed*, or is physically or mentally unable to testify as confirmed
> by competent medical evidence and where there is unrebutted
> prima facie evidence that indicates that the injury or death was
> work related, it shall be presumed, in the absence of substantial
> evidence to the contrary, that the injury or death was work related.

House Bill No. 1425 (Jan. 20, 2011) (emphasis added). When this bill was proposed by the

Senate Committee on Commerce and Labor on February 14, 2011, however, the phrase, "where

- 11 -

the employee has been killed" had been removed. This second version ultimately became Code § 65.2-105.

This legislative history demonstrates that the General Assembly considered applying the presumption found in Code § 65.2-105 to scenarios where, as here, the employee "ha[d] been killed," but decided against it. Consequently, we are left with Code § 65.2-105's plain language, which indicates that the statute is applicable when a claimant is still alive, but is "physically or mentally unable to testify as confirmed by competent medical evidence . . . ." Code § 65.2-105.

Accordingly, this Court holds that the commission did not err in determining that the presumption found in Code § 65.2-105 is not applicable to the present case.[6]

## IV. CONCLUSION

Therefore, this Court affirms the commission's holdings that the evidence failed to establish that claimant's injury arose out of his employment and that the presumption found in Code § 65.2-105 is inapplicable to the present case.

Affirmed.

---

[6] By case law a presumption that an accident "arose out of and in the course of . . . employment" applies when an employee is discovered dead at the scene of an on-the-job accident. See Southern Motor Lines Co v. Alvis, 200 Va. 168, 171-72, 104 S.E.2d 735, 738 (1958). In the case at bar, however, Arroyo was found alive at the accident scene. Accordingly, neither the presumption found in Code § 65.2-105 nor the common law "unexplained death presumption" applies. See K&G Abatement Co. v. Keil, 38 Va. App. 744, 757-58, 568 S.E.2d 416, 422-23 (2002) (holding that to apply the unexplained death presumption to cases where a claimant was found alive would "significantly alter[] the jurisprudence of workers' compensation law" and therefore "is more properly a matter of policy, a prerogative of the legislative branch of government").